**STUDENT PUBLIC INTEREST RESEARCH GROUP OF NEW JERSEY, et al.**

v.

**MONSANTO COMPANY.**

**Civ. A. No. 83–2040.**

United States District Court, D. New Jersey.

May 31, 1989.

---

Bruce J. Terris and Carolyn Smith Pravlik, Terris, Edgecombe, Hecker & Wayne, Washington, D.C. and Michael Gordon, Gordon, Gordon & Haley, West Orange, N.J., for Student Public Interest Research Group.

Clyde A. Szuch, Pitney, Hordin, Kipp & Szuch, Morristown, N.J., and Kenneth D. Roth, Davis, Reberkenny & Abramowitz, P.A., Cherry Hill, N.J., for Monsanto.

## OPINION

VANARTSDALEN, Senior District Judge.

## I. INTRODUCTION

On February 14, 1989, this court entered an opinion and order [1] awarding plaintiffs' counsel a total of $273,990.52 in attorneys' fees and litigation expenses pursuant to Section 505(d) of the Federal Water Pollution Control Act, 33 U.S.C. § 1365(d). [721 F.Supp. 604.] Presently before the court are plaintiffs' counsel's motion for reconsideration of the February 14, 1989 opinion, and an additional petition for attorneys' fees and litigation expenses associated with litigating the fees issue. I will address those motions *seriatim.*

## II. FACTS

As the facts of the underlying litigation and award of attorneys' fees and related litigation expenses have previously been set forth in considerable detail, they need not be repeated. For a complete discussion of the underlying facts of this case, see opinion and order of March 24, 1988 [1988 WL 156691] and opinion and order of February 14, 1989.

## III. PLAINTIFFS' MOTION FOR RECONSIDERATION

A. *Background*

On February 28, 1989, plaintiffs filed a motion for reconsideration of this court's February 14, 1989 opinion pursuant to Federal Rules of Civil Procedure 52 and 59. Plaintiffs contend that reconsideration is warranted because the court apparently overlooked one of their responsive briefs; to wit, "Plaintiffs' Brief in Reply to Defendant's Brief in Opposition to Plaintiffs' Application for an Award of Litigation Costs, Including Attorneys' Fees and Expert Witness Fees" (plaintiffs' reply brief).

Plaintiffs are apparently correct in that regard. Plaintiffs' reply brief was inadvertently overlooked amidst the plethora of briefs filed in this matter. Plaintiffs' motion for reconsideration shall thus be granted.

---

**1.** The February 14, 1989 opinion and order was filed with the Clerk of Court for the District of New Jersey on February 15, 1989, as Docket No. 144. For purposes of citation, it shall be referred to herein as the "February 14, 1989 opinion," or where pinpoint citations are appropriate "Slip op. at ——." [Editor's Note: The February 14, 1989 opinion is published at 721 F.Supp. 604. References to the corresponding page in the Federal Supplement have been added to the slip opinion references.]

B. *Discussion*

1. Application of Southern New Jersey Rates

In my February 14, 1989 opinion, I concluded that southern New Jersey was the "relevant community" for purposes of computing the reasonable hourly rate prong of the lodestar. Slip op. at 28. [721 F.Supp. at 618.] One of the sources cited in support of that proposition was the Report of the Third Circuit Task Force on Court Awarded Attorney Fees, 108 F.R.D. 237 (1987) (Task Force Report), wherein the Task Force "concluded that the best rule is the 'forum rate' rule.... [d]eviation [from which] should be permitted only when the need for 'the special expertise of counsel from a distant district' is shown or when local counsel are unwilling to handle the case." *Id.* at 261 & n. 72. In that regard I stated that "[p]laintiffs in the instant action have provided no evidence to establish a lack of New Jersey counsel capable of litigating this action, or that New Jersey law firms were unwilling to handle the case." Slip op. at 29. [721 F.Supp. at 618.]

Plaintiffs' Washington, D.C., lead counsel, Terris, Edgecombe, Hecker & Wayne (The Terris firm or plaintiffs' counsel) and local New Jersey counsel, Gordon, Gordon & Haley, dispute that finding and argue that they in fact provided specific evidence that (i) they were unable to locate New Jersey counsel willing to represent them, and (ii) the Terris firm had special environmental litigation expertise at the time they were initially retained.

■ Before addressing the merit of plaintiffs' "evidence," I note two things. First, the Task Force's words "[d]eviation from this rule should only be permitted," clearly manifest a presumption favoring application of the forum's rate and placing the burden of rebuttal upon the party urging a different rate, *i.e.*, plaintiffs' counsel. Second, it should be noted that the Task Force Report was merely one of several rationales cited to support application of the forum rate rule. *See* slip op. at 25–30. [721 F.Supp. at 616–18.]

■ Plaintiffs point to the affidavits of Edward Lloyd, Esquire, and Carolyn Smith Pravlik, Esquire, as demonstrative of their inability to locate available and willing New Jersey counsel. Plaintiffs' Brief in Support of their Motion for Reconsideration and to Amend the Findings and Order Pursuant to Federal Rules 52 and 59[2] at 2–3 (citing Plaintiffs' Reply Brief at 15–16; Plaintiffs' Ex. 56, paras. 2, 4–5, at 1–2 (affidavit of Edward Lloyd, Esq.); Plaintiffs' Ex. 57, paras. 2–3, at 1 (affidavit of Carolyn Smith Pravlik, Esq.)). Mr. Lloyd's affidavit, however, proves nothing of that sort, but merely states that he "was not *aware* of any attorneys or law firms who would have been willing to assume the risks of litigating cases of this type.... without contemporaneous payment for their services[,] [or of] New Jersey firms with any experience litigating environmental issues on behalf of plaintiffs." Plaintiffs' Ex. 56, para. 4, at 2 (emphasis added). Regardless of Mr. Lloyd's experience as a staff attorney with the Rutgers University Environmental Law Clinic, his ignorance of the existence of New Jersey attorneys willing to have undertaken litigation of this sort is simply not probative evidence on the issue. Ignorance of a fact in this context is not evidence.

Further, nowhere in Mr. Lloyd's affidavit does he attest to any affirmative effort to retain New Jersey counsel. On that issue, defendant pointedly notes that

[o]ne probable reason why Mr. Lloyd's affidavit is devoid of specific efforts to retain New Jersey counsel is that there was apparently no need to engage in such efforts. As set forth in the first affidavit of Bruce Terris, sometime in 1982, SPIRG was contacted by the [National Resources Defense Council (NRDC)] pilot project to develop and institute citizen suits under the Clean Water Act. After SPIRG agreed to participate in this project, Trial Lawyers for Public Justice ("TLPJ"), a Washington, D.C. based law firm, and Kathleen Butler "agreed to serve as counsel" to SPIRG,

**2.** Hereinafter Plaintiffs' Reconsideration Brief.

NRDC and other environmental groups. In late 1982, after NRDC and TLPJ decided they did not wish to pursue the New Jersey cases developed during the pilot project (including this case against defendant Monsanto), Anthony J. Roisman of TLPJ referred plaintiffs to the Terris firm for continued representation. In early 1983, according to Mr. Terris, the Terris firm "agreed" to represent plaintiffs.

Defendant's Brief in Opposition to Plaintiffs' Motion for Reconsideration and to Amend the Findings and Order Pursuant to Federal Rules 52 and 59 at 4 n. * (citing Plaintiffs' Ex. 1, para. 2, at 1–3). Thus, it would appear that plaintiffs' failure to proffer any evidence of an inability to retain New Jersey counsel to represent them in this matter at the time this litigation was initially contemplated was because no such attempt was ever made.

Mr. Lloyd's statement that he was "aware of" a few sole practitioners who engaged in environmental litigation practice on behalf of plaintiffs, but that "none of them was in a position to handle litigation of this magnitude," Plaintiffs' Ex. 56, para. 4, at 2., is conclusory and similarly fails to constitute evidence. Moreover, since I have repeatedly stated this case "neither prospectively, nor retrospectively viewed was particularly difficult, complex, or requiring of specialized expertise," slip op. at 29 [721 F.Supp. at 618.] Mr. Lloyd's reference to "litigation of this magnitude" is presumably an allusion to the entire group of twenty-six Clean Water Act cases. The question here, however, was not whether there were New Jersey counsel capable of efficiently litigating twenty-six Clean Water Act cases, but whether there was New Jersey counsel capable of handling *this* case. Mr. Lloyd's own statement would suggest there were. Plaintiffs' Ex. 56, para. 4, at 2.

Mr. Lloyd further states that recently he has been unsuccessful in locating New Jersey counsel willing to initiate similar citizen suits. *Id.*, para. 5, at 2. Plaintiffs' efforts

to retain New Jersey counsel in 1988 in connection with other cases are of little significance.[3]

Ms. Pravlik claims in her affidavit to have encountered "considerable difficulty in locating an attorney to serve as local counsel." Plaintiffs' Ex. 57, para. 2, at 1. That statement similarly fails to prove the absence of New Jersey counsel willing or able to handle this case. Regardless of the asserted (and unspecified) difficulties she encountered, Ms. Pravlik was ultimately successful in locating local counsel. Further, Ms. Pravlik's affidavit speaks only to her *own firm's* difficulty in retaining *local counsel;* not plaintiffs' inability to secure willing and able New Jersey lead counsel. The former is not the same as the latter. There are many reasons why a firm might readily agree to represent SPIRG as lead counsel, but decline an invitation to serve as local counsel.

Plaintiffs also argue that defendant's affidavit evidence from New Jersey attorneys "does not show that the affiants were willing to represent plaintiffs in an action such as this case." Plaintiffs' Reconsideration Brief at 5. Plaintiff's further complain that "none of the affiants even identified themselves as environmental litigators for plaintiffs." *Id.* at 5–6 (citations omitted). That argument is meritless. As noted above, the burden was on plaintiffs (as the party demanding non-forum rates) to demonstrate that New Jersey counsel were unwilling or otherwise incompetent to undertake representation of plaintiffs in this matter. *See* Task Force Report, 108 F.R.D. at 261 & n. 72 (citing *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140–41 (8th Cir.1982) ("If 'a plaintiff can show he has been unable through diligent, good faith efforts to retain local counsel, attorney's fees ... are not limited to the prevailing rate in the district where the case is tried.'" (citation omitted)). As stated in the February 14, 1989 opinion, and as discussed above, plaintiffs never satisfied that burden. The burden of re-

---

3. Moreover, the "negative responses" Mr. Lloyd claims to have received in response to his inquiries as to whether several unidentified New Jersey lawyers "would consider taking on cases such as this case" is inadmissible hearsay. *See* Fed.R.Evid. 801.

buttal thus never shifted to defendant. Defendant's affidavits were submitted for one purpose only: to establish prevailing southern New Jersey market rates. They did not address, nor did they need address, whether the affiants would have been willing to represent plaintiffs some five years ago. Nor did the court cite the affidavits in question for any other purpose than to establish prevailing southern New Jersey market rates on a historical basis. *See* slip op. at 29, 30–33. [721 F.Supp. at 618, 618–20.]

Plaintiffs' counsel also take issue with the court's statement that "the special expertise, if any, which the Terris firm claims to have gained ... as a result of litigating twenty-six substantially similar Clean Water Act cases could not have accrued until *after* the decision had already been made ... to retain them, *i.e.*, 'after the fact.'" Slip op. at 29 [721 F.Supp. at 618] (citing Plaintiff's Brief at 15) (emphasis in original). Plaintiffs' counsel somehow misconstrues that portion of the opinion as a finding that the Terris firm had no previous environmental litigation experience. *See* Plaintiffs' Reconsideration Brief at 3–4; Plaintiffs' Reconsideration Reply Brief at 3. The court said nothing of the kind. The citation given by the court to "Plaintiffs' Brief at 15" quite clearly evidences that the finding was directed only to plaintiffs' claim that their litigation of "45 similar cases, the original 26 cases and 19 cases brought in 1986 and 1987 ... provided them with a level of expertise and familiarity with both the Water Act and the developing body of citizen suit case law which [made] their time spent in any individual case more efficient." The court's observation was thus correct to the extent

plaintiffs' counsel claimed "special expertise" as a result of litigating the twenty-six Clean Water Act cases.[4]

 Finally, even assuming the Terris firm were environmental litigation experts, and that such expertise was acquired prior to this litigation, the key inquiry remains not whether the Terris firm had such experience, but *whether such claimed unique expertise was essential for this litigation*. In the February 14, 1989 opinion, I concluded it was not. *See* slip op. at 9. [721 F.Supp. at 610.] Notwithstanding plaintiffs' view to the contrary, Plaintiffs' Reconsideration Reply Brief at 4–5, I decline to modify my decision as to this issue.

In sum, I conclude plaintiffs had the burden of proving that New Jersey attorneys/law firms were unwilling or unable to litigate this case. Plaintiffs failed to sustain this burden, and imposition of the forum rate rule is thus appropriate in this case. Inasmuch as plaintiffs did not submit evidence sufficient to rebut application of the forum rate rule, there is no contested factual issue requiring a hearing. *See Cunningham v. City of McKeesport*, 753 F.2d 262 (3d Cir.1985), *vacated and remanded on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986), *original decision reinstated* 807 F.2d 49 (3d Cir.1986), *cert. denied*, 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987).

### 2. Travel Time and Travel Expenses

Plaintiffs argue that because the reductions to their claimed travel time and expenses made in the February 14, 1989 opinion were premised upon application of the forum rate rule, they should not have been reduced. Plaintiffs' Reconsideration Reply

---

**4.** Plaintiffs' counsel similarly misconstrues the court's statement that plaintiffs "voluntarily chose the venue of the action." Plaintiffs' Reconsideration Brief at 3 n. 1 (citing slip op. at 29). [721 F.Supp. at 618]. The court is well aware that section 505(c)(1) of the Federal Water Pollution Control Act, 33 U.S.C. § 1365(c)(1) dictates the venue of the action as the district in which the discharge source is located. The Terris firm's clients, including plaintiffs in this action, however, are all *national or regional* environmental organizations with the sole exception of *Student Public Interest Research Group* of

New Jersey. *See* Plaintiffs' Ex. 1, para. 1, at 1 ("The [Terris] firm represents the Student Public Interest Research Group of New Jersey ..., Friends of the Earth ..., New York Public Interest Research Group and Atlantic States Legal Foundation ... in 45 citizen suits...."). The record indicates that plaintiffs brought many of their Clean Water Act citizen suits in New York. *See, e.g.,* Plaintiffs' Ex. 1, para. 2, at 2; Defendant's Ex. 2. Plaintiffs were under no legal obligation to sue New Jersey entities. Through their decision to do so, plaintiffs "voluntarily chose the venue of the action."

Brief at 5. However, as stated above, an asserted "unawareness" of available New Jersey counsel, and/or an averred "difficulty" in locating local counsel, do not equate with proof of an inability to secure New Jersey lead counsel. I therefore conclude no reason exists to modify the February 14, 1989 opinion in this regard.

### 3. Staffing of Depositions of Plaintiffs' Witnesses

Plaintiffs' next complaint is directed to the court's 50% reduction to the number of hours claimed for the deposition of plaintiffs' own witnesses, which reduced plaintiffs' claim by 53 hours. Plaintiffs' *id.* at 5–6. That reduction was premised on a finding that plaintiffs had two attorneys present at the depositions of their own witnesses and that there was "no way to determine from the evidence ... which attorney was doing the 'lion's share' of the deposition in question." Slip op. at 11–12 & n. 14. [721 F.Supp. at 611–12 & n. 14.] Plaintiffs submit that the court overlooked "rebuttal evidence submitted by plaintiffs that Ms. Pravlik defended all six depositions of plaintiffs' witnesses," Plaintiffs' Reconsideration Brief at 8 (citing Plaintiffs' Reply Brief at 28–29; Plaintiffs' Ex. 57, para. 5, at 2); and that Mr. Sunderland briefly attended only two of the depositions in order to participate in certain discussions. Plaintiffs consequently argue that only some 1.25 hours logged by Mr. Sunderland should be deducted from their total hours claimed for depositions of their witnesses.

■ After due consideration of Ms. Pravlik's rebuttal affidavit, I believe modification of the 50% reduction made to plaintiffs' claim for hours spent in depositions of their own witnesses to be in order. Plaintiffs shall be entitled to an additional 53 hours of attorney time, less 10 hours,[5] for a total increase of 43 hours to their attorneys' fees lodestar. Forty-three hours

### 4. Photocopying Expenses, Postage/Overnight Delivery Charges and Expert Witness Fees

After due consideration of plaintiffs' arguments and defendant's response thereto, the court finds plaintiffs' arguments meritless and declines to modify the February 14, 1989 opinion as it pertains to photocopying expenses, postage/overnight delivery charges and expert witness fees. I believe the February 14, 1989 opinion provides ample support for those reductions. *See also infra* at 886–889.

### 5. Water–General and Water–NJ

This court denied plaintiffs' request for compensation for hours allocated to this case from plaintiffs' two general billing categories, "Water–General" and "Water–NJ." Slip op. at 12 n. 3, 48–49. [721 F.Supp. at 611 n. 3, 625–26.] Therein, I stated that plaintiffs failed to provide any evidence that the allocated hours were for activities that related to this specific litigation. *Id.* I believe the Third Circuit's recent affirmance of Judge Brown's decision to deny such hours in *SPIRG v. Anchor Thread*, No. 84–320 [1988 WL 49177] (D.N.J. May 13, 1988), *aff'd*, 869 F.2d 592 (3d Cir.1989), amply supports that decision, notwithstanding plaintiffs' counsel's view to the contrary.

Plaintiffs request that the court reconsider its decision because they "do not understand how they could have explained more clearly the relationship of this work billed to the general billing categories to this particular case." Plaintiffs' Reconsideration Brief at 16. Specifically, the Terris firm points to Mr. Terris' first and second

multiplied by the average hourly rate, *see* slip op. at 33–34 [721 F.Supp. at 620], of $87 yields an increase to the Terris firms' fee award of $3,741.00.

---

**5.** The 53 hour figure shall be reduced by 10 hours to account for (a) 9 hours spent by Mr. Sunderland preparing Dr. Martin and Dr. Kavanaugh for depositions which Ms. Pravlik ultimately defended and had to prepare for as well; (b) time spent by Mr. Sunderland editing a

document request which could have been performed by an associate or paralegal; and (c) descriptive vagueness of time spent on "General Deposition Activities." *See* Plaintiffs' Ex. 4, at 10; Plaintiffs' Ex. 5, at 146, 158–66.

affidavits as providing the requisite detail. *See* Plaintiffs' Ex. 1, 48.

Mr. Terris' one-sentence description of the work billed to the general categories simply does not explain the necessary relationship of the "Water–General" and "Water–NJ" categories to the instant litigation. *See, e.g.,* Plaintiffs' Ex. 1, para. 19, at 11 ("This subcategory includes a portion of the time spent in drafting a model set of interrogatories and document requests for all of our cases...."). Nor does Mr. Terris' statement that hours were billed to the two general categories "[a]s a matter of course, when work was being performed that was common to all 26 of the cases or to all 15 of the New Jersey cases" explain how this purported commonality was even determined. *See* Plaintiffs' Ex. 48, para. 24, at 11.

For the foregoing reasons, I conclude the disallowance of time allocated by plaintiffs to the "Water–General" and "Water–NJ" categories was appropriate in light of the deficiencies in the record.

### 6. Delay Adjustment

In their fee petition, plaintiffs' counsel submitted a request for an "upward adjustment" to their basic fee award to compensate them for their purported losses experienced as a result of the delayed receipt of their fees. In support of that request, plaintiffs' counsel presented elaborate interest rate data and various proposed methodologies for calculating a delay adjustment.

After reviewing that request, I denied plaintiffs' counsel's claim on three bases. First, that a delay adjustment was unnecessary to produce a "reasonable" fee award in this case. *Id.* at 37. Second, that plaintiffs had already received a "unique but real" tax benefit as a consequence of the deferred payment of fees. *Id.* at 37–38. Third, that plaintiffs had failed to sustain their burden of documenting the need for a delay adjustment. *Id.* at 38.

Plaintiffs claim reconsideration of the court's decision is warranted because the court apparently overlooked their arguments refuting the theory that they derived

any tax benefit from the delayed receipt of payment. *See* Plaintiffs' Reconsideration Brief at 16–20; Plaintiffs' Reconsideration Reply Brief at 9–10. However, as I stated in the February 14, 1989 opinion, "*regardless* of the tax effects," slip op. at 38 [721 F.Supp. at 621] (emphasis added), plaintiffs failed to document their need for a delay adjustment in accordance with *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 923–24 (3d Cir.1985). Although plaintiffs claimed that the Terris firm incurred losses and had to take out loans as a result, it is nonetheless impossible to determine "precisely how and to what extent [defendant] Monsanto, from among the entire group of Clean Water Act cases, was responsible for the Terris firm's borrowing." Slip op. at 39. [721 F.Supp. at 622.]

■ In so finding, I reject plaintiffs' contention that such a showing is not essential to the grant of a delay adjustment. Plaintiffs' Reconsideration Brief at 19. I agree with defendant that plaintiffs cannot argue that the various debts the Terris firm incurred evidence their need for a delay adjustment, while simultaneously failing to explain how or why defendant Monsanto was singularly responsible for the Terris firm's borrowing. By its own admission, the Terris firm was litigating at least twenty-six Clean Water Act cases. There is simply no evidence proffered by plaintiffs that *this* litigation was responsible for the Terris firm's debts.

■ Moreover, the fee award allowed is already quite generous. Plaintiffs appear to have utterly ignored Justice White's pointed admonition in *Pennsylvania v. Delaware Valley Citizens' Council* that fee shifting statutes

*were not designed as a form of economic relief to improve the financial lot of attorneys,* nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or

threatened violation of specific federal law. Hence, if plaintiffs, such as [SPIRG] *find it possible to engage a lawyer* based on the statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied.

478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (emphasis added). The clear intention of fee-shifting statutes was to enable plaintiffs to retain *competent* counsel, *id.; see also Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 107 S.Ct. 3078, 3090–91, 97 L.Ed.2d 585 (1987) (*Delaware Valley II*); *SPIRG v. AT & T,* 842 F.2d 1436, 1448 (3d Cir.1988) (citing *Senate Report on § 1988 of the Civil Rights Act,* S.Rep. No. 1011, 94 Cong., 2d Sess. 6, *reprinted in* 1976 U.S. Code Cong. & Admin.News 5913), not necessarily *any* counsel they wanted, however specialized or experienced.

In sum, I believe the $206,061.83 in attorneys' fees awarded the Terris firm in the February 14, 1989 opinion was both reasonable and generous. Moreover, that amount is some $112,542.91 in excess of the $93,-518.92 awarded by Judge Brown for *both* attorneys' fees and litigation expenses in *SPIRG v. Anchor Thread,* No. 84–320 (D.N.J. May 24, 1989). I thus conclude upon reconsideration that no delay adjustment is warranted in the instant case.

### 7. Summary

In accord with the foregoing discussion, plaintiffs' requests for modification of the opinion of February 14, 1989, as it pertains to application of southern New Jersey rates, travel time and travel expenses, photocopying expenses, postage/overnight delivery charges, expert witness fees, Water–General and Water–NJ hours, and a delay adjustment, will be denied. Plaintiffs' request for an upward modification of the number of hours allowed for depositions of their own witnesses shall be granted. The Terris firm shall thus be awarded $3,741.00 in addition to the $206,061.83 in attorneys' fees provided for in the February 14, 1989 opinion.

### 8. Addendum

Footnote 9 of plaintiffs' reconsideration brief notes several almost de minimis errors which took place in the computation of the lodestar. *See* slip op. at 14 n. 6. [721 F.Supp. at 613 n. 6.] First, in Appendix A, at 2 [721 F.Supp. at 628], the fees for Ms. Wagner's half hour should correctly have been $27.50, not $21.25. Plaintiffs' counsel shall thus be awarded an additional $6.25 in attorneys' fees.

Second, plaintiffs note the court found they had spent 39 hours in the preparation of *amici curiae* briefs in other appellate matters and reduced the lodestar proportionately. Plaintiffs' Reconsideration Brief at 20–21 n. 9 (citing slip op. at 14, 25) [721 F.Supp. at 613, 616]. Upon review, it appears plaintiffs actually spent 42, (3 additional hours) on that endeavor. *Id.* (citing Plaintiffs' Ex. 4, at 18–19). Multiplying 3 hours by the $87 "average hourly rate" used by the court for reduction purposes, *see* slip op. at 34 & n. 13 [721 F.Supp. at 620 & n. 13], yields a figure of $261.00. Two hundred and sixty-one dollars shall thus be subtracted from plaintiffs' lodestar.

Third, plaintiffs aver the court incorrectly cited the average historical southern New Jersey rate for paralegals as $45 rather than the correct figure of $37.00. Thus, an additional $8 must be subtracted from the $45 figure used in the February 14, 1989 opinion. In sum, plaintiffs' counsel's attorney fees lodestar shall be modified as follows:

| (Additions) | Depositions of Plaintiffs' Own Witnesses | $3,741.00 |
| | Ms. Wagner's time | 6.25 |
| | | $3,747.25 |
| (Subtractions) | Amici Curiae Hours Reduction | $ 261.00 |
| | | 8.00 |
| | | $ 269.00 |

When $269 is subtracted from the award of $3,747.25, the result is $3,478.25. The Terris firm shall thus be awarded $3,478.25 in addition to the award made in the February 14, 1989 opinion.

## IV. PLAINTIFFS' SUPPLEMENTAL FEE APPLICATION

### A. Background

On May 13, 1988, plaintiffs filed an application for an award of litigation costs, including attorneys' fees and expert witness fees in the total amount of $789,400.15 as of May 9, 1988.[6] On December 1, 1988, plaintiffs filed a supplemental application for an award of litigation costs, including attorneys' fees and expert witness fees (the supplemental application) seeking an additional $78,778.34 in fees and expenses.

The supplemental application requests compensation primarily for work and expenses relating to the fee petition litigation. In particular, plaintiffs' counsel requests $71,085.00[7] in attorneys' fees and $7,693.34 in expenses associated with their fee petition work. As part of that claim, plaintiffs seek approximately $897.50 for work done on the merits aspect of this case, which was allegedly inadvertently omitted from plaintiffs' initial application. *See* Plaintiffs' Supplemental Application at 2 n. 1; Plaintiffs' Ex. 93.

### B. Discussion

■ I conclude, albeit reluctantly, that pursuant to the Third Circuit's opinion in *In re Fine Paper Antitrust Litigation*, 751 F.2d 562 (3d Cir.1984), plaintiffs are entitled to attorneys' fees for their fee petition work, subject to certain reductions. *Id.* at 595 n. 26 (citing *Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 215, 219 (3d Cir.1983)). *See also Prandini v. National Tea Co.*, 585 F.2d 47, 53–54 (3d Cir.1978) ("[C]ourts have consistently held that attorneys may be awarded, under statutory fee authorizations, compensation for the expenses of and time spent ... on the fee application and successful fee appeals." (citations omitted)). My reluctance is premised upon the same concern raised by Judge Brown in *SPIRG v. Anchor Thread*

wherein he denied the Terris firm's supplemental fee application stating the fee petition had already "dwarfed the case in chief" and, if the court allowed such an award, "there would be no end to [that] litigation as plaintiffs [had] already stated that they would move for interest on [the] Court's judgment." No. 84–320, slip op. at 6 (D.N.J. September 9, 1988).

■ Plaintiffs' proposed award of fees for fee petition work must be assessed under the same legal criteria which govern the determination of a reasonable award for merits work. *See Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 924 (3d Cir.1985) (fee petition litigation is a "separate entity subject to lodestar and *Hensley* reduction analysis" (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Thus, the court must establish the number of hours plaintiffs' counsel reasonably expended in the fee petition litigation and the reasonable hourly rates which should apply. *See, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986) (*Delaware Valley I*); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir.1973).

■ In addition, to the extent that plaintiffs did not fully succeed in recovering their requested fees, the fee award may be "reduced to reflect the incomplete success on the fee award." *SPIRG v. AT & T Bell Laboratories*, 842 F.2d 1436, 1455 (3d Cir. 1988). As *Institutionalized Juveniles* instructs, the appropriate approach to such a reduction is entrusted to the discretion of the court, which can affect a general reduction of the lodestar, completely disallow hours spent on wholly unsuccessful claims, or use a combination of both methods. 758 F.2d at 925.

---

**6.** That claim was reduced to a total of $273,-999.52, for all plaintiffs' counsel. *See* slip op. at 51. [721 F.Supp. at 626.] Additional modifications were made to that award in this opinion. *See supra* Section II.

**7.** Plaintiffs' Ex. 93, at 1–3. Plaintiffs' supplemental application claims approximately 443 attorneys' hours and 50 paralegal hours to have been expended on that aspect of the litigation. *Id.* at 3.

### 1. Hourly Rates

Plaintiffs' proposed fees lodestar is once again based upon Washington, D.C., market rates. In accord with the court's February 14, 1989 opinion, and for the reasons set forth therein, "average" southern New Jersey rates shall be applied to determine the supplemental lodestar as well.[8] *See* slip op. at 25–33. [721 F.Supp. at 616–20.]

### 2. Hours Reasonably Expended

In total, plaintiffs seek compensation for 443 attorneys' hours and 50 paralegal hours devoted to preparing and litigating their fee petition. I fully agree with defendant's that "[t]his figure is staggering under any analysis, but particularly so given plaintiffs' counsel's apparent experience in fee petition litigation." [9] Defendant's Brief in Opposition to Plaintiffs' Supplemental Application for an Award of Litigation Costs, including Attorneys' Fees and Expert Witness Fees at 5 (Defendant's Opp. Supp. Brief). In accord with the Supreme Court's opinion in *Hensley*, 461 U.S. at 439–440, 103 S.Ct. at 1942–43, all hours that were not reasonably expended must be excluded from the fees lodestar.

#### a. Specific Reductions

One glaring example of excessiveness is the 92.5 hours which Ms. Pravlik logged for preparing "Plaintiffs' Supplemental Brief in Reply to Defendant's Brief in Opposition to Plaintiffs' Application for an Award of Litigation Costs, Including Attorneys' Fees and Expert Witness Fees." (Plaintiffs' Supp. Brief). *See* Plaintiffs' Ex. 93. Therein, plaintiffs attempted to justify and explain the significantly higher amount of time their counsel spent in litigating the merits aspect of this case. *See* Plaintiffs' Supp. Brief at 5–28. In that regard, plaintiffs engaged in a comprehensive review of the time records of Monsanto's counsel for the merits aspect of the case, including the drafting of a chart comparing the tasks and hours of the parties' respective counsel.

That exercise was, in my opinion, utterly without merit. As defendant Monsanto correctly observes, that "effort was fruitless given that plaintiffs' own analysis revealed a significant difference in hours." Defendant's Opp. Supp. Brief at 6. Moreover, Ms. Pravlik's time slips indicate that at least half of her 92.5 claimed hours are for time spent reviewing, analyzing and charting the time records of defense counsel, Kenneth D. Roth, Esquire. I do not believe defendant should fairly be expected to pay for that undertaking. Therefore, 50%, or 46 hours, of the 92.5 hours the Terris firm claims to have been spent on their supplemental brief, shall be deducted from the reasonable hours prong of the supplemental attorneys' fee lodestar.

Plaintiffs' proposed fees lodestar also includes hours allocated to this case from the "Water–General" and "Water–NJ" cases. That allocated time was purportedly spent upon "General Research and Calculations" and accounts for a total of 8 hours. *See* Plaintiffs' Ex. 4, at 31–33; Defendant's Ex. 63. For the same reasons as set forth in the February 14, 1989 opinion, *see* slip op. at 49 [721 F.Supp. at 626], I decline to award plaintiffs any additional hours for time claimed under the "Water–General" and/or "Water–NJ" categories.

Further, even were I to accept plaintiffs' contention that they provided evidence which would enable the court to determine how and to what extent the individual activity in each of the non-specific files is related to this case, Plaintiffs' Reconsideration Brief at 14–15, I do not find their claim warranted under the Third Circuit's ruling in *Prandini v. National Tea Co.*, 557 F.2d 1015, 1019 n. 3 (3d Cir.1977) (*Prandini I*), and *Prandini v. National Tea Co.*, 585 F.2d 47, 50 (3d Cir.1978) (*Prandini II*). In *Prandini II,* the Court stated that proration of hours between two cases is appropriate "if evidence in the record supported a finding that certain hours *benefited both*

---

**8.** *See* Appendix A1. Appendix A1 is so designated to distinguish it from Appendix A to the February 14, 1989 opinion for citation purposes.

**9.** The enormity of the Terris firm's claim can readily be observed when one considers that an individual attorney would have to work eight hours a day, five days a week, for *eleven* weeks in order to accrue 443 hours.

*cases equally."* 585 F.2d at 51 (emphasis added). The obvious intent of the court was to protect *defendants* in parallel cases from each shouldering the full burden of paying for the same work. *See id.* at 51. It is difficult, if not impossible, to see how that goal would be furthered by apportionment in view of the large number of hours plaintiffs' counsel claims to have spent specifically on this case. As plaintiffs' own interpretation of the time records suggest, "Monsanto's counsel expended some 732.84 fewer hours, or 21% less time, on defense, than did plaintiffs' counsel in prosecuting this action." Slip op. at 8 & n. 2. [721 F.Supp. at 610 & n. 2.]

■ If any time was actually saved by preparation of model complaints, pleadings, interrogatories and settlement strategies, *see* Plaintiffs' Reconsideration Brief at 15, such savings are not readily observable. The court is certainly caused to wonder how much greater the disparity in hours between plaintiffs' and defendant's counsel would have been were this the only case plaintiffs' counsel handled.

Moreover, as Judge Brown stated in *SPIRG v. Anchor Thread,* "[t]his court is faced with either twenty six parallel Clean Water Act cases or fifteen Clean Water Act cases.... This is not a case wholly analogous to [*Prandini I*] and its progeny wherein the court was faced with only one parallel case to consider." No. 84–320, slip op. at 9 (citing *Prandini I,* 557 F.2d at 1015). I therefore conclude *Prandini I* and *II* are distinguishable and inapplicable on the facts of this case. Proration is thus unwarranted. Plaintiffs' supplemental request for 8 hours attributable to "General Research and Calculations" will be denied.

For the reasons stated in the February 14, 1989 opinion, slip op. at 15–18 [721 F.Supp. at 613–14], two of the 6 hours claimed for Ms. Pravlik's July 28, 1988 conference travel time shall be subtracted. An additional 22 hours shall also be disallowed to account for time devoted to re-searching, developing, and writing plaintiffs' arguments regarding their request for a delay adjustment (16.5 hours) and their request for compensation for "Water–General" and "Water–NJ hours claimed (5 hours). Plaintiffs' Ex. 95, at 7–8, 20–22, 24, 29–29. Both those claims were denied by the court and do not relate to any aspects of the fee application upon which plaintiffs were successful in any degree.

For the reasons set forth above, a total of 78 hours shall be specifically deducted from the Terris firm's lodestar.

### b. General Reduction

■ A 20% "general reduction" shall also be imposed on plaintiffs' supplemental fee application. *See SPIRG v. AT & T,* 842 F.2d at 1455 ("[W]here fee applicants do not fully succeed in recovering their fees, the fee award must be reduced to reflect incomplete success on the fee award."). In so doing, I decline to impose the 65%[10] overall reduction requested by defendant since relatively few of plaintiffs' claims were rejected in their entirety. The 20% reduction also takes into consideration the continued illegibility and vagueness of Mr. Terris' time slips as well as overstaffing in preparation of the fee petition. *See generally* Plaintiffs' Ex. 95. The time slips pertaining to the preparation of plaintiffs' initial fee petition and their reply brief indicate that no less than five attorneys, or over 50% of the attorneys in the Terris firm, *see* Plaintiffs' Ex. 1, para. 3, at 3, substantially participated and billed hours for preparation of the fee petition. Again, if there was any "economy of time" resulting from the Terris firm's representation of plaintiffs in this and twenty-six parallel Clean Water Act cases, this court is unable to discern it. Plaintiffs' paralegal hours shall similarly be reduced by 20%.

### 3. Computation of the Supplemental Lodestar

Utilizing southern New Jersey rates, the Terris firm's lodestar amount (pre-reduc-

---

**10.** *See* Defendant's Opp. Reconsideration Brief at 22. Plaintiffs had requested an award of $789,400.16 in fees and expenses. The court ultimately awarded plaintiffs $273,990.52, or approximately 35% of their proposed award (not including the minor changes discussed *supra,* Section II of this opinion). A strict mathematical comparison of the fees requested and the fees obtained would thus result in a 65% reduction to plaintiffs supplemental attorneys' fees lodestar.

tion) would equal $45,520.01 in attorneys' fees and $1,105 in paralegal fees for a total of $46,625.01, see Appendix A1, subject to the following schedule of reductions:

Terris, Edgecombe, Hecker & Wayne

| Attorneys' Hours | | Hours |
|---|---|---|
| Originally Claimed | | 443 |
| Specific Deductions | | |
| Supplemental Brief (Comparison of Hours) | 46 | |
| Water–General/Water–NJ | 8 | |
| Conference Travel Time | 2 | |
| Time Spent on Non–Successful Claims | 22 | |
| Total Hours Deducted | 78 | |
| Hours Originally Claimed Less Specific Deductions | | 365 |
| General 20% Reduction | 73 | |
| Total Hours Deducted | 151 | |
| Paralegals' Hours | | 27 |
| General 20% Reduction | 5 | |
| Total Hours Deducted | 22 | |

When the 151 hour reduction is multiplied by the $105 average hourly rate,[11] it yields a total reduction to the Terris firm's attorney fees lodestar of $15,855.00. The pre-reduction attorneys' fees lodestar of $45,520.01, reduced by $15,855.00, yields an award of $29,665.01 in attorneys' fees.

Similarly, when the 5–hour reduction to the Terris firm's paralegals' lodestar is multiplied by the $42.50 average hourly rate, see id., it yields a total reduction to the paralegals' lodestar of $212.50. The pre-reduction paralegals' fees lodestar of $1,105.00, reduced by $212.50, yields an award of $892.50. In sum, the Terris firm shall be awarded a total of $30,557.51 in supplemental attorneys' and paralegals' fees.

### 4. Supplemental Litigation Expenses

#### a. Photocopying

Plaintiffs have submitted a supplemental claim in the amount of $4,577.40 for copying expenses incurred in the fee petition litigation and charges for the month of April 1988 which were not included in the original fee application because the petty cash receipts were not prepared on the underlying log until the subsequent month. See Plaintiffs' Exs. 93, 98. Although I believe that amount is grossly excessive, plaintiffs have submitted a detailed breakdown of those charges with their application, as well as an explanation of those entries. Id. Defendant has submitted no specific evidence other than general assertions of "vagueness," to counter plaintiffs' evidence. Therefore, plaintiffs shall be awarded a total of $4,577.40 for photocopying.

#### b. Postage

Plaintiffs have submitted a claim for $1,218.67 for expenses euphemistically described as "postage." See Plaintiffs' Exs. 93, 96. For the same reasons set forth in the February 14, 1989 opinion, see slip op. at 41–42 [721 F.Supp. at 623], plaintiffs shall be awarded 12% of their claim, which equals $146.24.

The court finds plaintiffs' argument that their use of overnight delivery services was

**11.** That figure was calculated in accordance with the methodology used in the February 14, 1989 opinion, see slip op. at 34 & n. 13. [721 F.Supp. at 620 & n. 13.] It is a general average, based on historical southern New Jersey rates (as determined by years of litigation and experience level) which yields an average of approximately $105 an hour. See Appendix A1 (construing Plaintiffs' Ex. 93).

necessary to comply with Local Rule 12 (imposing time restrictions on the filing of briefs) to be wholly meritless. *See* Plaintiffs' Reconsideration Brief at 7–8. Any delay plaintiffs' counsel might experience in the use of first class mail is largely—if not solely—attributable to plaintiffs' decision to retain distant, Washington, D.C. counsel to represent them. Defendant should not be forced to bear the added burden of expenses occasioned by a decision over which it had no control or responsibility. *See* slip op. at 16 [721 F.Supp. at 613] ("Plaintiffs are entitled to retain whatever counsel they desire ... but penalizing the defendant for plaintiffs' choice of distant counsel is a separate matter."). Moreover, plaintiffs' exhibit 98 contains numerous copies of receipts indicating the Terris firm's overnight delivery service use extended far beyond the timely filing of documents with the Clerk of Court, but extended to the overnight (or even more costly *same day*) delivery of copies to opposing counsel and this court. These expenses were clearly unnecessary.

Plaintiffs' statement that they believe "it is unreasonable to require plaintiffs to sacrifice ... briefing time ... in order to save a comparatively small amount of mailing expense," Plaintiffs' Reconsideration Reply Brief at 8, clearly evidences that the Terris firm made a deliberate decision to use overnight and same day delivery services for their own convenience. Plaintiffs' counsel are certainly entitled to make such a decision, but they are not entitled to shift the added expense to defendant. Finally, defense counsel's use of overnight delivery services is irrelevant to the issue of reasonableness. *See* slip op. at 20 [721 F.Supp. at 615]; *see also Delaware Valley I,* 478 U.S. at 565, 106 S.Ct. at 3098 (fee-shifting statutes were not designed to replicate exactly the fee an attorney might charge pursuant to a private fee agreement).

### c. Support Staff Overtime

For the same reasons set forth in the court's opinion of February 14, 1989, plaintiffs' claim for $1,058.67 in support staff overtime shall be denied *in toto. See* slip op. at 43. [721 F.Supp. at 623] Plaintiffs have failed to prove to the court's satisfac-

tion that those expenses were essential and necessary and not incurred merely for the convenience of the Terris firm. *See* Plaintiffs' Reconsideration Reply Brief at 14; Plaintiffs' Exs. 94, 96, 98.

Plaintiffs' counsel's statement that they "had no incentive to increase their costs in this case by incurring unnecessary overtime and messenger expenses" is not convincing and highlights at least one problem caused by allowing attorneys' fees for work done on attorneys' fee petitions. By that point in the litigation, the obligation of the defendant to pay reasonable fees has already been established. Thus, while there may be no objective incentive to incur unnecessary fees, neither is there any incentive to exercise restraint. Judging from the Terris firm's use of express delivery services and overtime claims, their prevailing attitude seems to have been "spare no expense, Monsanto will pay for it!" For example, how can it be seriously suggested that defendant is liable for the three and one-half hours of support staff overtime plaintiffs' counsel consumed on retyping Mr. Terris' illegible time slips. Similarly, the court is unable to discern any action taken by Monsanto which should make them responsible for, *inter alia,* coleslaw and chicken dinners purchased to feed the Terris firm's overtime staff.

For the foregoing reasons, plaintiffs' overtime claim for $1,058.67 shall be denied.

### d. Expert Witness Fees

Plaintiffs seek $320 for the services of Dr. Kavanaugh as an expert witness in May of 1988. *See* Plaintiffs' Ex. 96. I conclude no award of fees for Dr. Kavanaugh is appropriate given the court's rejection of his testimony and the lack of any indication as to the specific nature of the services he rendered. *See id.* I acknowledge that "plaintiffs' [sic] achieved complete success," Plaintiffs' Reconsideration Reply Brief at 8–9, as to imposition of the maximum permissible penalty under the statute (although it was far less than the penalty which plaintiffs sought), but Dr. Kavanaugh's testimony was wholly irrelevant to that decision. *See* slip op. at 44–47. [721 F.Supp. at 624–25]

#### e. Travel Expenses

In accord with the reasons set forth in the opinion of February 14, 1989, *see* slip op. at 15–18, 43 [721 F.Supp. at 613–14, 624], plaintiffs' counsel shall be awarded two-thirds of their requested travel expenses of $235.65. Plaintiffs are thus entitled to $157.10 for travel expenses.

#### f. Telephone

In accord with the reasons set forth in the opinion of February 14, 1989, *see* slip op. at 42 [721 F.Supp. at 623], plaintiffs' counsel shall be awarded their $165.65 claim for telephone charges in full.

#### g. Subpoena Service

Plaintiffs' counsel also submits a $29 claim for subpoena service. Plaintiffs' Exs. 93, 96. As this amount appears both reasonable and adequately documented, it will be allowed in full.

#### h. Couriers/Messengers

In accord with the reasons set forth in the opinion of February 14, 1989, *see* slip op. at 43 [721 F.Supp. at 623–24], plaintiffs' counsel's claim for $28 incurred for the use of courier/messenger service will be denied.

#### i. Miscellaneous

Plaintiffs' claim for $8.30 in miscellaneous expenses appears reasonable and will be allowed.

#### 5. Summary of Award for Litigation Expenses

In summary, plaintiffs' counsel shall be awarded reasonable litigation expenses as follows:

| | |
|---|---:|
| Photocopying | $4,577.40 |
| Postage | 146.24 |
| Support Staff Overtime | – 0 – |
| Expert Witness Fees | – 0 – |
| Travel | 157.10 |
| Telephone | 165.00 |
| Subpoena Service | 29.00 |
| Couriers/Messengers | – 0 – |
| Miscellaneous | 8.30 |
| | $5,083.04 |

### V. CONCLUSION

For the reasons set forth above, the Terris firm shall be awarded $39,118.80 in addition to the court's February 14, 1989 award of $269,549.51, for a total fee award in this case of $308,668.31.[12]

### APPENDIX A1
COMPARISON OF FEES LODESTAR USING MINIMUM AND AVERAGE SOUTHERN NEW JERSEY MARKET RATES FOR
*MONSANTO* SPECIFIC LITIGATION

| Attorney | Year | Level | Hours | Plaintiffs' Fee Application | | Average Southern New Jersey Market Rates | |
|---|---|---|---|---|---|---|---|
| | | | | Rates | Totals | Rates | Totals |
| Terris | 1988 | 20+ | 51.75 | $225 | $11,643.75 | $125.00 | $6,468.75 |
| Hecker | 1988 | 7–10 | 12.50 | 185 | 2.312.50 | 107.50 | 1,318.75 |
| Pravlik | 1988 | 7–10 | 320.75 | 160 | 51,320.00 | 107.50 | 34,480.63 |
| Wayne | 1988 | 7–10 | 15.50 | 160 | 2,480.00 | 107.50 | 1,666.25 |

**12.** February 14, 1989 Award

| | | |
|---|---:|---:|
| Attorneys'/Paralegals' Fees | $221,581.33 | |
| Litigation Expenses | 47,968.18 | |
| Subtotal | | $269,549.51 |
| Reconsideration Motion Modifications | $ 3,478.25 | |
| Supplemental Fee Petition | | |
| Attorneys'/Paralegals' Fees | 30,557.51 | |
| Litigation Expenses | 5,083.04 | |
| Subtotal | | $ 39,118.80 |
| TOTAL | | $308,668.31 |

| Attorney | Year | Level | Plaintiffs' Fee Application | | | Average Southern New Jersey Market Rates | |
|---|---|---|---|---|---|---|---|
| | | | Hours | Rates | Totals | Rates | Totals |
| Wagner | 1988 | 7–10 | 1.50 | $160 | $240.00 | $107.50 | $161.25 |
| Laudati | 1988 | 4–6 | 11.75 | 130 | 1,527.50 | 102.50 | 1,204.38 |
| Millian | 1988 | 1–3 | 2.75 | 95 | 261.25 | 80.00 | 220.00 |
| Attorneys Total | | | 416.50 | | $69,785.00 | | $45,520.01 |
| Paralegals | 1988 | N/A | 26.00 | $ 50 | $ 1,300.00 | 42.50 | $ 1,105.00 |
| | | | (Unreduced) Terris Lodestar Total | | | | $46,625.01 |

## ORDER

After due consideration of plaintiffs' motion for reconsideration and to amend the findings and order pursuant to Federal Rules of Civil Procedure 52 and 59, plaintiffs' supplemental application for an award of litigation costs, including attorneys' fees and expert witness' fees, and defendant's responses thereto, it is

Ordered as follows:

1. Plaintiffs' motion for reconsideration is granted;

2. For the reasons set forth in the accompanying opinion, the law firm of Terris, Edgecombe, Hecker & Wayne is awarded on the original fee petition the sum of Three Thousand Four Hundred and Seventy-Eight Dollars and Twenty-Five Cents ($3,478.25), in addition to the amount awarded in the court's opinion and order dated February 14, 1989;

3. For the reasons set forth in the accompanying opinion, the law firm of Terris, Edgecombe, Hecker & Wayne is awarded, pursuant to their supplemental fee petition, attorneys' fees and expenses in the amount of Thirty-Five Thousand Six Hundred Forty Dollars and Fifty-Five Cents ($35,640.55).