**PUBLIC INTEREST RESEARCH
GROUP OF NEW JERSEY,
et al., Plaintiffs,**

v.

**YATES INDUSTRIES, INC., Defendant.**

Civ. No. 89–5371 (AET).

United States District Court,
D. New Jersey.

June 10, 1991.

Edward Lloyd, Environmental Law Clinic, Newark, N.J., for plaintiffs.

Giordano, Halleran, & Ciesla by Richard Friedman, Middletown, N.J., for defendant.

ANNE E. THOMPSON, District Judge.

This matter comes before the court on motions by both plaintiffs and defendant for partial reconsideration of this court's order dated February 12, 1991, which granted in part and denied in part plaintiffs' motion for partial summary judgment, denied defendant's cross-motion to dismiss, and granted in part and denied in part defendant's cross-motion for summary judgment. 757 F.Supp. 438. This suit is brought under the Federal Water Pollution Prevention and Control Act, 33 U.S.C. §§ 1251 to 1386. Plaintiffs, several environmental groups, sued under 33 U.S.C. § 1365(a)(1)(i), which permits citizen-plaintiffs to file civil actions. Defendant Yates Industries manufactures electroplated copper circuit foil at a facility in Bordentown, New Jersey.

Plaintiffs allege that defendant violated discharge and reporting requirements in its New Jersey Pollution Discharge Elimination System/Discharge to Surface Water ("NJPDES/DSW") permit, issued by the New Jersey Department of Environmental Protection ("DEP"). The permit sets discharge "parameters" for various pollutants at two discharge points, and requires Yates to measure pollutant discharge, to report any permit violations, and to submit monthly Discharge Monitoring Reports ("DMRs") which summarize these measurements.

## I. SCOPE OF MOTIONS FOR REARGUMENT

■ Motions for reargument[1] are governed in this district by General Rule 12(I) of the United States District Court for the District of New Jersey. Before reaching the merits of the motion the court must decide whether the arguments are properly raised under Rule 12(I). The motions may address only those matters of fact or issues of law which were presented to but not considered by the court. *SPIRG v. Monsanto Corp.*, 727 F.Supp. 876, 878 (D.N.J.), *aff'd mem.* 891 F.2d 283 (3d Cir.1989). Thus, matters raised on reargument may not be introduced for the first time on a motion for reargument. *See, e.g., Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159, 162 (D.N.J. 1988). Accordingly, the court will review each argument raised for reconsideration to determine whether to allow reargument.

### A. *Plaintiffs' motion for reargument*

Plaintiffs ask the court to reconsider five aspects of the February 12th decision. First, plaintiffs argue that the court should find that the permit contained a bioassay effluent limitation which, if it exists, was violated by Yates. Second, they seek a finding that defendant violated its permit on those occasions where it failed to report the type or frequency of effluent sampling on certain Monitoring Report Forms. Third, plaintiffs ask the court to find that defendant failed to report certain excess discharges, listed as violations 70–72 and 75 in plaintiffs' Revised Exhibit 8. Fourth, plaintiffs assert that the court should not

---

**1.** "Reconsideration" and "reargument" are interchangeable terms.

have granted summary judgment to defendants on six bioassay monitoring violations. Fifth, plaintiffs request that the court amend its prior order to require defendant to submit to plaintiffs certain documents related to effluent monitoring.

In their first point, plaintiffs wish the court to reconsider plaintiffs' exhibit 22 and defendant's exhibit A, which were submitted in connection with the alleged bioassay violations. The court agrees that, amidst the huge volume of submissions filed by each party, we did not consider exhibit 22. Thus, the court will reexamine this matter.

Without addressing each specific piece of information offered by plaintiffs, the court finds that their other four arguments are not appropriate for reconsideration under Rule 12(I), however. These requests are not based on issues of law or matters of fact which were presented to and overlooked by the court. Instead, plaintiffs rely on new evidence, newly-raised statutes and regulations, and matters which the court previously considered (even if they were not discussed in the opinion). Plaintiffs also rely in part on a few pieces of evidence which were submitted to the court with the initial motion. However, plaintiffs now attempt to utilize these exhibits in support of totally different aspects of the summary judgment motion. Thus, the court did not "overlook" this material in relation to the arguments for which they are currently being offered.

### B. *Defendant's motion for reargument*

Defendant seeks reargument on three portions of the court's prior order. Yates first argues that plaintiffs should not have received summary judgment on wholly past violations, citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), *on remand*, 844 F.2d 170, 172 (4th Cir.1988). This court did not address certain aspects of *Gwaltney* which were previously raised by defendant. In order to clarify its prior opinion, the court will grant defendant's motion for reargument of this particular point.

Yates seeks reargument on the court's decision to grant injunctive relief, as well as the court's finding that Yates should not have rounded off discharge measurements. These two arguments are not appropriate for reconsideration under Rule 12(I). They depend on new information and material which the court already considered in conjunction with its prior opinion. Thus, the court will deny defendant's request for reargument of these particular points.

Defendant attempts to present additional issues for reargument in a brief in response to plaintiffs' reargument motion. Rule 12(I) requires motions to be filed no more than ten days after the original opinion was entered. This court gave the parties additional time in which to file their motions. Yates' response brief was submitted well after the deadline imposed by the court. Defendant had sufficient opportunity to raise any points for reconsideration within the time allotted. The court therefore will not consider any matters which were presented for reargument after the March 15th deadline, whether presented informally or as a cross-motion.

## II. MOTION ON REARGUMENT

### A. *Bioassay limitation*

■ In its opinion of February 12th, the court denied plaintiffs' motion for summary judgment on three violations of the permit's bioassay discharge limitation. The court found that there was an issue of fact whether the permit actually imposed a bioassay limitation, because of confusion over the applicability of two footnotes.[2]

---

**2.** The court explained:
"Part III, page 2 of defendant's permit states [in the column labelled 'discharge limitations'] that there should be no measurable toxicity under the bioassay parameter. This strongly suggests that there is a bioassay limitation. However, that entry is marked by a single asterisk denoting a footnote. It appears to refer to the text of a footnote, also marked with a single asterisk, which reads, 'Monitoring only.' This suggests that there is *no* actual bioassay limitation.
    Plaintiffs argue that the single asterisk next to the bioassay limitation actually refers to a

Defendant argued that the permit imposed no discharge limitation, requiring instead only that Yates monitor bioassay discharge. Plaintiffs asserted that defendant was held to a limitation of "no measurable toxicity—less than 10% mortality including in 90% effluent." The court agreed with plaintiffs that the evidence strongly suggested that they would ultimately prevail on the merits. However, the court was faced with an issue of material fact which was barely sufficient to defeat plaintiffs' motion for summary judgment.

Plaintiffs point to exhibit 22, a letter dated January 11, 1988 which was prepared by a staff scientist for the DEP. The letter stated that Yates had "exceeded the final permit whole effluent toxicity limitation of *no measurable acute toxicity (NMAT—less than 10% mortality in all test concentrations including 100% effluent)*." This document removes any genuine issue whether the permit imposes a limit on bioassay discharge. This court should give considerable deference to the judgment of the enforcing agency. *SPIRG v. American Cyanamid, Inc.,* 23 ERC 2044, 2050 (D.N.J.1986); *cf. Chemical Manufacturers Ass'n v. Natural Resources Defense Council,* 470 U.S. 116, 120, 105 S.Ct. 1102, 1105, 84 L.Ed.2d 90 (1985). Since the DEP considers the permit to include a bioassay limit, and in light of the other evidence presented in this case, in particular the wording of the permit itself, this court finds that the permit does impose a bioassay discharge limitation of "no measurable toxicity—less than 10% mortality including in 90% effluent."

Defendant argues that granting summary judgment would effectively modify the permit. Since the state has established procedures for minor modification of permits, *see* N.J.A.C. 7:14A–2.12(a), defendant asserts that the permit may only be modified through these procedures. This would be a valid argument if the court were modifying the permit. However, this court's decision does not modify the permit; it clarifies an ambiguity in the permit through methods which preserve the proper deference to the responsible agency. Since the permit has always imposed a bioassay discharge limitation, this court's finding does not add to or alter any terms of the contract.

Defendant asserts that summary judgment should be denied because there remains an issue of fact whether the permit is open to another interpretation. However, the evidence overwhelmingly establishes that the permit imposes a limit on bioassay discharge. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Here, defendants have failed to raise a *genuine* issue of material fact, *see id.* at 248, 106 S.Ct. at 2510, and the court therefore shall grant summary judgment for plaintiffs on the allegation that Yates exceeded a limitation set by the permit for bioassay discharge on three separate occasions.

### B. *Wholly past violations*

This court denied Yates' request for summary judgment on certain categories of

footnote text marked with a *double* asterisk, which reads 'Less than 10% mortality [sic] including in 90% effluent.' Plaintiffs' argument is bolstered by several factors: (1) There is no double asterisk on the text of page 2 of Part III; (2) there is, however, a single asterisk earlier in the text of the page, next to the entry for 'Silver–Total'; (3) the silver entry reads 'N/A' under the column for discharge limitations, suggesting that 'monitoring only' would be an appropriate footnote; (4) a plain reading of the bioassay entry suggests that 'no measurable toxicity' refers to a discharge limitation, and a notation of 'monitoring only' would appear to conflict with a discharge

limitation. Plaintiffs claim that 'less than 10% mortality including in 90% effluent' is a phrase of art 'unique to bioassay testing.' However, plaintiffs do not provide any evidence to back up this assertion.

It is possible that Part III, page 2 of the permit contains a typographical error, and that the bioassay entry should have been marked with a double asterisk. This would certainly be a more logical explanation than that posited by defendant. However, this court does not have enough information to make a decision at the summary judgment stage."

violations, listed in exhibit KK, which Yates asserts are wholly past. The court found that it had jurisdiction to consider these claims, since plaintiff had made good-faith allegations of continuous or intermittent violation, as required by *Gwaltney*, 484 U.S. at 64, 108 S.Ct. at 385. However, the court did not address defendant's argument that, under *Gwaltney*, plaintiffs lacked standing to pursue these allegations because they have failed to establish that the violations are in fact continuing.

■ Defendant incorrectly states the holding in *Gwaltney*. The Court does not impose any additional standing requirement on cases involving allegations of ongoing noncompliance.[3] Rather, in order to prevail, plaintiffs must prove on the merits that the violations are in fact "continuous or intermittent." *Gwaltney* at 66, 108 S.Ct. at 386. "Citizen-plaintiffs may accomplish this [requirement] either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations." *Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*, 844 F.2d 170, 171 (4th Cir.1988).

[T]he Fourth Circuit linked proof of ongoing violations to the Supreme Court's discussion of mootness in *Gwaltney:*

... the district court may wish to consider ... *whether the risk of defendant's continued violation had been completely eradicated* when citizen-plaintiffs filed suit.

We believe this is the correct approach to proving ongoing violations or the reasonable likelihood of continuing violations under *Gwaltney*.

*Sierra Club v. Union Oil Co.*, 853 F.2d 667, 671 (9th Cir.1988) (citation omitted) (emphasis in original).

In support of its motion for summary judgment, Yates provided evidence of remedial actions that it had taken to address past violations. However, in spite of these efforts, Yates has continued to violate its permit. Since the evidence establishes that violations by Yates have continued after the complaint was filed, plaintiffs have satisfied the first means of prevailing under *Gwaltney* as interpreted by the Fourth Circuit.

Yates also argues that, since this court declined to enjoin defendant from future reporting and monitoring violations, the court cannot now find that violations were nonetheless ongoing. Defendant cites to language in the February 12th opinion in which this court stated that Yates "is already in substantial compliance with most of the monitoring and reporting requirements that it was previously violating." However, this court's decision to limit imposition of the extreme sanction of injunctive relief should not be taken as an indication that plaintiffs have not established "ongoing violations" under the test established in *Gwaltney*.

Defendant asserts that plaintiffs may not impute continuing violations on defendant in all parameters merely because Yates has violated a few parameters. However, as defendant points out, the circuits are split on the question of whether continuing violations in one parameter can be used to impute continuing violations in other parameters, at least for the purposes of establishing jurisdiction.[4] Yates points to decisions from the Fourth Circuit, *Chesapeake Bay Foundation v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 698 (4th Cir.1989) and from the District of Massachusetts, *National Resources Defense Council v. Gould*, 733 F.Supp. 8, 10 (D.Mass.1990), in support of its argument

**3.** *See Gwaltney* at 65–66, 108 S.Ct. at 385–86. The Court states that plaintiffs lack standing only if defendant can prove that seemingly good-faith allegations of ongoing violations are in fact a "sham." *Id.*

**4.** Yates refers to language in *Gwaltney* where the Supreme Court states that "the purpose of [the 60 day] notice to the alleged polluter is to

give it an opportunity to bring itself into *complete compliance* with the Act and thus likewise render unnecessary a citizen suit." *Gwaltney*, 484 U.S. at 60, 108 S.Ct. at 383 (emphasis added). Here, the evidence establishes that Yates is not in *complete* compliance, and therefore this language is not relevant.

**516**

that *penalties* should not be imposed for "wholly past violations of one parameter simply because there were ongoing violations of another parameter." *Chesapeake Bay,* 890 F.2d at 698.

■ This court is not bound by these decisions, however. We hold that evidence of violations in some parameters is admissible as evidence that future violations are likely in other parameters, thus satisfying the requirements of *Gwaltney,* particularly where, as is the case here, numerous parameters have been violated on many occasions since the filing of the suit. Evidence that defendant is generally not in compliance with the permit can convince the reasonable trier of fact that there is a continuing likelihood of recurring violations.

■ Under the circumstances of this particular case, plaintiffs have established that there is a continuing likelihood that future violations may occur in any of the permit parameters that defendant has been found to have violated in the past. The court particularly notes that defendant has continued to violate both effluent limitations and reporting and monitoring requirements, leading the court to conclude that there is a continuing likelihood of discharge violations in general and of reporting and monitoring violations in general. Accordingly, upon reconsideration this court stands by its earlier decision which granted summary judgment to plaintiffs on various violations which defendant argued were wholly past.

## III. CONCLUSION

For the reasons presented in this opinion and in the court's opinion dated February 12, 1991, the court has denied plaintiffs' motion for reconsideration on all points except the issue of bioassay limitations. On reconsideration, the court finds that defendant's NJPDES/DSW permit does in fact impose a limitation on bioassay discharge, and that plaintiffs are therefore entitled to summary judgment. The court has also denied defendant's motion for reconsideration on all points except the determination of what are "wholly past violations." On reconsideration, the court finds that the violations listed in defendant's exhibit KK are not wholly past, and that defendants therefore are not entitled to summary judgment on those violations.

It is therefore on this 9th day of June, 1991

ORDERED that plaintiffs' motion for reconsideration be and hereby is granted in part and denied in part, and reargument is granted solely for the question of whether or not the NJPDES/DSW permit issued to Yates Industries contains a bioassay limitation, and it is further

ORDERED that defendant's motion for reconsideration be and hereby is granted in part and denied in part, and reargument is granted solely for the question of whether or not the violations listed in defendant's exhibit KK are wholly past, and it is further

ORDERED that summary judgment be and hereby is granted to plaintiffs on the three bioassay discharge violations raised in plaintiff's complaint. The court will decline to revise its prior opinion which found that plaintiff has established that defendant's violations are not wholly past.