**INTERFAITH COMMUNITY ORGANIZATION, et al., Plaintiff,**

v.

**HONEYWELL INTERNATIONAL, INC., (formerly known as Allied-Signal, Inc.), et al., Defendants.**

**No. CIV.A. 95–2097(DMC).**

United States District Court, D. New Jersey.

Aug. 26, 2004.

---

Kevin J. Coakley, Connell Foley, Thomas Jeffrey Pasuit, Connell Foley LLP, Roseland, NJ, for Special Master.

Edward Lloyd, Columbia Law School, New York, NY, for Plaintiffs/Consol Plaintiffs.

William F. Mueller, Clemente, Mueller & Tobia, P.A., Morristown, NJ, John Michael Agnello, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, PC, David W. Field, Lowenstein, Sandler, PC, Roseland, NJ, for Defendants.

## OPINION

CAVANAUGH, District Judge.

Presently before this Court is Plaintiff Interfaith Community Organization's ("ICO"), and ECARG, Inc.'s ("ECARG") (hereinafter collectively referred to as the "Petitioners") application for an award of litigation costs, including attorneys' fees and expert witnesses' fees.

## BACKGROUND

On May 21, 2003, this Court entered an Amended Opinion granting judgment in favor of ICO and ECARG with regard to ICO and ECARG's 42 U.S.C. § 7002(a)(1)(B) claims against Honeywell. *See Interfaith Community Organization v. Honeywell Int'l Inc.*, 263 F.Supp.2d 796 (D.N.J.2003). The Amended Opinion Awarded ICO and ECARG fees and costs that were "incurred in furtherance of its RCRA claim against Honeywell in this action." *Id.* at 850.

On July 18, 2003, ICO filed Plaintiff's Application for an Award of Litigation Costs, Including Attorneys' Fees and Expert Witness' Fees ("ICO Fee Application"). The ICO Fee Application sought reimbursement of $4,706,506.09 in attorneys fees and expenses. On November 13, 2003, ICO filed Plaintiff's Reply Brief in Support of Their Application for an Award of Litigation Costs, Including Attorneys' Fees and Expert Witness' Fees ("ICO Reply"), reducing ICO's request from $4,706,506.09 to $4,587,990.22.

On July 21, 2003, ECARG filed a Petition for an Award of Attorneys' Fees, Expert Witness Fees and Other Costs Related to ECARG's RCRA claim ("ECARG Fee Petition"). The ECARG Fee Petition sought $7,652,080.24 in attorneys' fees and expenses. On November 14, ECARG filed a Reply in Further Support of the ECARG Fee Petition ("ECARG Reply"), reducing

its request from \$7,652,080.24 to \$7,642,385.82.

The parties to this action appeared before this Court on May 4, 2004 for a hearing on the record.

## ANALYSIS

Section 7002(e) of the Resources Conservation and Recovery Act ("RCRA") 42 U.S.C. 6972(e) provides that the Court "may award costs of litigation (including reasonable attorneys' and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate." This Court having determined that ICO and ECARG are prevailing parties in this litigation, stating in an Order dated May 16, 2003:

> Having prevailed on their RCRA claims, [ICO] and ECARG are entitled to an award of attorneys' fees, costs and expenses they have incurred in furtherance of their RCRA claims in this action.

## I. FEES

■ *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir.1973) establishes the principle that the "lodestar" is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. The lodestar method is presumed to yield a reasonable fee. *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir.1996) (internal citations omitted).

There are several issues that must be addressed in determining the award of attorneys' fees and costs in this matter. The first issue is whether the ECARG and ICO petitions are duplicative (i.e. whether these two parties seek separate compensation for the same work—as they both litigated RCRA claims against Honeywell). Second, as applies to counsel for ICO,

Terris, Pravlik & Millian, L.L.P. (the "Terris Firm") and counsel for ECARG, Wallace King Marraro & Branson, P.L.C. ("Wallace King"), whether New Jersey or Washington, D.C. rates should apply, and what those rates are. Third, this Court, in calculating the "lodestar" must determine whether the claimed number of hours expended by counsel here are reasonable. Thus, this Court must determine how much of the parties' work is recoverable, what rate to apply to the work, and multiply that rate by the reasonable number of hours expended to arrive at the "lodestar" amount.

## A. Is the Total Fee Recovery Duplicative?

■ The first issue that this Court must assess in deriving the "lodestar" is whether or not ICO and ECARG's pursuit of their RCRA claims were unnecessarily duplicative. Honeywell argues that whatever fee this Court awards, it should be tailored to reflect the reasonable and necessary costs for trying the RCRA claim *one time*. Honeywell asserts that ICO and ECARG's fee applications seek reimbursement as if each applicant was the sole RCRA plaintiff and was required to bear the entire cost of prosecuting the RCRA claim, but that in reality the two applicants prosecuted nearly identical RCRA citizen suit claims that sought and achieved a single result.

■ Both ICO and ECARG incurred an enormous amount of attorney hours; more than 10,000 by ICO and 9,000 by ECARG, and paralegal hours; 2,797 by ICO and 4,738 by ECARG, prosecuting their RCRA claims. Honeywell asserts even where ICO and ECARG claim to have coordinated efforts, that they have done so in name only. As an example, Honeywell notes that ICO and ECARG filed a joint motion for summary judgment, but each spent large amounts of time on the unsuccessful

effort; 362.5 attorney hours by ICO and 200 attorney hours by ECARG. While this is a significant amount of time, Defendant does not demonstrate how a large number of hours is necessarily indicative of duplicative efforts or lack of coordination.

■ Ultimately, it is the duty of the party seeking fees to exclude such hours from its initial calculation of the total hours expended. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Honeywell asserts that while ICO and ECARG are within their rights to pursue very similar claims independently, that duplicative and redundant costs cannot be shifted to Honeywell. *See e.g. Halderman v. Pennhurst State Sch. & Hosp.,* 49 F.3d 939, 943–44 (3d Cir.1995). Honeywell insists that it should only be liable for the fees and costs necessary to the litigation of a "single and well-managed action." *Gerena–Valentin v. Koch,* 739 F.2d 755, 759 (2d Cir.1984).

ECARG is essentially an intervener in this matter, independently choosing to file a complaint against the Defendant, Honeywell. Courts in other circuits have awarded interveners attorneys' fees under fee-shifting statutes. *See e.g. EPA v. Envtl. Waste Control, Inc.,* 710 F.Supp. 1172, 1248 (N.D.Ind.1989) *aff'd,* 917 F.2d 327 (7th Cir.1990) (intervener entitled to fees under RCRA).

Furthermore, ICO and ECARG are not fully aligned in interest. ECARG was a Defendant for the entire litigation against whom Plaintiffs sought a finding of liabili-

ty. Only later did ECARG choose to pursue its RCRA claim against Honeywell.

Furthermore, ECARG and ICO are *adverse parties* in this litigation, thus ECARG had no control over ICO's case. Also, while ICO, as an environmental group, focused its claim on the imminent and substantial endangerment that the chromium contamination presents to the environment at or near the Site, ECARG, as owner of the Site, presented a RCRA claim that was more focused on the human health risks posed by contamination at the Site.

While it is the case that both ICO and ECARG pursued RCRA claims, this similarity alone is insufficient to render all of their work as duplicative. This was an immensely complicated litigation, and ICO and ECARG were adverse parties throughout. Accordingly, this Court declines Honeywell's request to treat ICO and ECARG as a "single prevailing party" for fee recovery purposes

**B. Appropriate Billing Rate**

The second issue that must be determined with regard to this fee application is what fee should apply to the Terris Firm and to Wallace King.[1] Both of these firms are based in Washington, D.C. and wish to have the Washington, D.C. market rates apply to their fee applications. Honeywell asserts that New Jersey rates should apply, but that if this Court is to determine that Washington, D.C. rates should apply, that those rates be controlled by the Laffey Matrix.[2]

---

1. Honeywell has conceded that the hourly rates charged by Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein (hereinafter "Carella Byrne," one of the two firms representing ECARG) are reasonable, so Carella Byrne's rates are not in issue here.

2. Although discussed in greater detail *infra,* the "Laffey Matrix," is an official statement of market-supported reasonable attorney fee

rates which was adopted, and is periodically updated, by the United States Court of Appeals for the District of Columbia. *See Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4 (D.C.Cir.1984) *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985), *overruled in part by Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516 (D.C.Cir. 1988) (en banc).

■ The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive. *See* Alan Hirsch & Diane Sheehey, Federal Judicial Center, Awarding Attorneys' Fees & Managing Fee Litigation 20 (1994); *compare Cunningham v. City of McKeesport,* 753 F.2d 262, 268 (3d Cir. 1985) (adopting firm's regular billing of $100 per hour for purposes of lodestar calculation), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986), *original decision reinstated,* 807 F.2d 49 (3d Cir.1986), *cert. denied,* 481 U.S. 1049, 107 S.Ct. 2179, 95 L.Ed.2d 836 (1987) *with Student Pub. Interest Research Group v. AT & T Bell Lab.,* 842 F.2d 1436, 1443–45 (3d Cir.1988) (rejecting approach of adopting attorneys' actual billing rates for more flexible community market rate approach).

In *Blum v. Stenson,* 465 U.S. 886, 890, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court held that attorneys from the Legal Aid Society of New York, a nonprofit law office, were entitled to a fee based on prevailing market rates rather than the cost to such lawyers for providing their services. In *AT & T Bell Laboratories,* the Third Circuit has determined the, under *Blum,* that the normal billing rate of the Terris Firm was below the market rate and that fee awards for the Terris Firm should be based on community market rates rather than the Terris Firm's actual billing rate. *AT & T Bell Lab.,* 842 F.2d at 1448. That Court also affirmed the district court's use of rates based on the Washington, D.C. market, in which the Terris Firm is located. *Id.*

In fee cases involving out of state counsel, the question arises as to whether the governing hourly rate should be the prevailing rate of the forum community or the out of state counsel's home community. The Third Circuit has not developed a universal, *per se,* answer to this issue.

In 1985, the Third Circuit established a Task Force on Court Awarded Attorney Fees to address the issue of fee awards in this circuit. The Task Force recommended the adoption of the "forum rate" rule. Report of the Third Circuit Task Force on Court Awarded Attorney Fees, 108 F.R.D. 237, 260 (1985). The Task Force explicitly indicated that this recommendation was "contrary to current Third Circuit practices." *Id.* at 261, n. 73. The Task Force unequivocally stated that where there is a difference between the forum's rate and that of the petitioning attorney, "[t]he Third Circuit uses the rate applicable in the locale in which the attorney practices." *Id.* at 249, n. 40.

Here, ICO and ECARG seek an award based on market rates in Washington, D.C., where the Terris Firm and Wallace King are located. Despite the recommendation of the Task Force, "[n]either a task force report nor a subsequent panel can overrule a published opinion of this Court." *PIRG v. Windall,* 51 F.3d 1179, at 1186 n. 9 (3d Cir.1995). It is curious that ICO has cited *Windall* because, in that case, the Third Circuit adopted a general rule that the forum community is the relevant community for the purposes of determining hourly rates unless the fee applicant can show that the case requires the special expertise of counsel from the non-forum location or that counsel from the local forum are unwilling to take the case. *Id.* at 1187–88. Ultimately, however, case law is inconsistent with regard to this issue.

■ Most Courts in this Circuit have held that, absent special expertise or inability to obtain local counsel, the forum rates should apply. The Task Force has indicated that the forum rate rule should be applied except "when the need for 'special expertise of counsel from a distant district is shown' or when local counsel are unwilling to handle the case." 108 F.R.D.

at 261. Accordingly, this Court must determine whether this matter required the special expertise of the Terris Firm or Wallace King, or, in the alternative, that local counsel were unwilling or unable to handle this case.

### 1. Terris Firm

■ At the time that this suit was initiated, the Terris Firm had litigated hundreds of major environmental cases on behalf of citizens for more than twenty-five years. The Terris Firm's experience was directly related to such issues in this case as the notice requirement, standing, and preclusion due to governmental activities. Furthermore, when this matter was initiated, the Terris Firm was litigating another RCRA matter involving the same New Jersey statutes and standards at issue here. *ICO v. Shinn,* Civ. No. 93–4774(JCL), Slip. Op. (D.N.J. November 24, 1998). Thus, Terris Firm had expertise not only in the general field of environmental cases brought by citizens, but more specifically, with regard to the particular issues of this case. Indeed, this Court is well aware that the Terris Firm has successfully litigated many citizen suits before this Court, various Courts of Appeal, and the United States Supreme Court.

This Court further notes that when ECARG decided to pursue its RCRA claim against Honeywell, that they retained Washington, D.C. counsel. Moreover, after Honeywell lost the RCRA claim in district court, it too retained counsel from Washington, D.C. Since all of the major parties involved in this litigation have retained counsel from Washington, D.C., ICO's retention of Washington D.C. counsel strikes this Court as eminently reasonable. In a case where all counsel were from Washington, D.C., the Third Circuit used Washington, D.C. rates because "the case was briefed and argued based on the [Washington] D.C. market." *AT & T Bell Laboratories,* 842 F.2d at 1442, n. 4 (1988).

■ Furthermore, the forum rate rule is allowed "when local counsel are unwilling to handle the case." 108 F.R.D. at 261. There is some disagreement between the parties as to what quantum of proof is necessary in order to demonstrate that local counsel are unwilling to handle a matter. Honeywell asserts that ICO must demonstrate that they were unable to obtain competent New Jersey counsel in this case. This Court does not read the case law to be so narrow. When a litigant has reason to know that competent local counsel are unavailable, it strikes this Court as a needless exercise in futility to go through the process of searching for something that is not there. *See e.g., Charles Q. by & Through Beilharz v. Houston,* 1997 WL 827546, 1997 U.S. Dist. LEXIS 17308 (M.D.Pa 1997); *Church of the Am. Knights of the Ku Klux Klan v. City of Erie, 2000 U.S. Dist.,* LEXIS 20019 (W.D. Pa 1998).

ICO had previously sought to protect residents from chromium exposure and to clean up properties. Affidavit of Joseph Morris, ¶ 2. ICO sought to bring litigation to clean up the contamination. *Id.* at ¶ 4. However, as a community group, ICO was not in a position to pay an attorney any compensation, not even for expenses. *Id.* at ¶ 5. In their search for competent legal counsel, ICO was repeatedly turned down by local attorneys for a number of reasons: the case involved political risk, the case involved intensive factual work, the legal terrain was extremely specialized, and the costs would be too great. *Ibid.* As a result, ICO brought its suit *pro se. ICO v. Shinn,* Civ. No. 93–4774(JCL), Slip Op. (D.N.J. November 24, 1998).

When ICO faced dismissal because it might not be able to proceed as a *pro se* litigant, ICO brought their case to the attention of the Terris Firm. During the litigation of that case, ICO and the Terris Firm discussed the contamination at issue

in this case. Affidavit of Joseph Morris, ¶ 6. Honeywell seems to assert that ICO's inability to retain competent counsel in *Shinn* is irrelevant because it does not explain why ICO failed to retain competent local counsel in this particular case. However, the law does not require ICO to engage in acts of futility, but rather that local counsel be unavailable or unwilling to take the case.

Accordingly, this Court will apply Washington, D.C. market rates to the Terris Firm.

### 2. Wallace King

Wallace King is based in Washington, D.C. Furthermore Wallace King has extensive experience litigating RCRA matters and other complex environmental claims. Wallace King was retained to represent the Grace Defendants in this matter in April, 1999. Part of their representation was the prosecution of cross-claims, including the RCRA cross-claim against Honeywell.

ECARG asserts that Wallace King was retained due to its substantial expertise in RCRA and other complex environmental litigation matters, Mr. Marraro's prior experience handling chromium-related matters in New Jersey, and other matters before the NJDEP, and the unwillingness of ECARG's prior law firm, Pitney, Hardin Kipp & Szuch, to pursue ECARG's RCRA claims against Honeywell.

Honeywell has asserted that ECARG has failed to introduce any evidence that there were no lawyers in New Jersey with the necessary expertise to represent it in this matter. Indeed, ECARG's primary trial counsel was a New Jersey attorney, Mr. Agnello of Carella Byrne.

Accordingly, this Court shall apply New Jersey rates to Wallace King. However, it should be noted that the rates charged in

this matter by Wallace King are in line with prevailing hourly rates charged by New Jersey attorneys with comparable skill, experience and reputation.

### 3. Washington D.C. Rates

Generally, the "reasonable hourly rate" needed to calculate the lodestar is based on the attorney's normal billing rate so long as it is reasonable. In Lindy I, the Court of Appeals for the Third Circuit stated that "[t]he value of an attorney's time is reflected in his normal billing rate." 487 F.2d at 167. The attorney's normal billing rate is then compared to the market value of legal services to assure that an attorney's normal billing rate is reasonable. *Lindy I, supra,* 487 F.2d at 167; *Daggett v. Kimmelman,* 617 F.Supp. 1269, 1281–1282 (D.N.J.1985), *aff'd,* 811 F.2d 793 (3d Cir.1987).

The reasonableness of an attorney's hourly rate is judged by comparing it to the prevailing market rate in the community in which the attorney's office is located or, in the case of the Terris firm, using market rates for the community since it is below the market rate.

Based upon the analysis of Third Circuit decisions, *supra,* this Court concludes that the fees to be awarded are based on the market rates where the attorney's office is located. Accordingly, the Terris firm is to be awarded fees based on the rates for Washington, D.C.

Here, the Terris firm's request for a fee award is based on the current hourly rates for all of the work performed in this case through May 31, 2003.[3] In *Missouri v. Jenkins,* 491 U.S. 274, 283–84, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), the Supreme Court held:

---

**3.** Plaintiffs used May 31, 2003, as the cut-off point for their application.

Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are preformed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute. [footnote omitted].

In *Lanni v. New Jersey*, 259 F.3d 146, 149–150 (2001), the Third Circuit held:

When an attorney's fees are awarded, the current market rate must be used. The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed.... A current rate is exactly that—a reasonable rate based on the currently prevailing rate in the community for comparable legal services.

Accordingly, this Court will award Plaintiffs their fees based on the current market rates for Washington, D.C. This Court must now determine the applicable market rates for Washington, D.C.

 Plaintiff has requested that the fee awarded be based on a fee schedule for Washington, D.C., that has been accepted by the District Court for the District of Columbia and the Court of Appeals for the District of Columbia. The fee schedule is called the "Laffey Matrix" because it was first accepted by the District Court for the District of Columbia in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C.1983), *aff'd*, 746 F.2d 4 (D.C.Cir. 1984), *overruled in part on other grounds, Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C.Cir.1988) (*en banc*).

The original and updated Laffey Matrix has been consistently used to determine appropriate fee awards by Courts in the District of Columbia. *See Salazar v. The District of Columbia*, 123 F.Supp.2d 8, 13–15 (D.D.C.2000); *Fischbach v. District of Columbia*, 1993 U.S. Dist. LEXIS 19756, *10 (D.D.C.1993); *Palmer v. Barry*, 704 F.Supp. 296, 298 (D.D.C.1989).

There is some disagreement as to how the Laffey Matrix is properly updated. Defendant argues that the Laffey Matrix ought to be updated using the consumer price index, or CPI, for the Washington, D.C., metropolitan area to the original 1981–1982 Laffey Matrix. This updating methodology was developed by the U.S. Attorney for the District of Columbia for use in settlement negotiations. *Covington v. District of Columbia*, *supra*, 839 F.Supp. at 898. This methodology produces lower hourly rates than the Plaintiff's methodology.

Plaintiff has updated the Laffey Matrix to more accurately reflect the presently existing market rates in Washington, D.C. This updating has been accepted by the District Court for the District of Columbia, this Court, and the Middle District of North Carolina. *Salazar v. The District of Columbia*, *supra*, 123 F.Supp.2d at 13–15; *PIRG v. Magnesium Elecktron, Inc.*, Civ. No. 89–3193, Slip op. 2, 10 (D.N.J. December 28, 1995), *vacated on other grounds*, 123 F.3d 111 (3d Cir.1997); *North Carolina Alliance for Transportation Reform v. North Carolina Department of Transportation*, 168 F.Supp.2d 569, 579–580 (M.D.N.C.2001).

There has been one instance where the District of Columbia has considered these two alternate methods for updating the Laffey Matrix. In that case, *Salazar v. District of Columbia*, *supra*, 123 F.Supp.2d at 13–15, the plaintiffs requested fees based on the methodology for updating the Laffey Matrix used by Plaintiffs here. The defendant, like Honeywell, re-

quested that the U.S. Attorney's matrix be used to reflect market rates. In its decision, the court evaluated the approaches and found that the approach used by plaintiffs was more appropriate.[4] *Ibid.*

Plaintiffs have also submitted the 2002 survey of billing rates from the National Law Journal in support of their assertion that the Laffey Matrix as updated is reasonable. Although Defendant argues that the National Law Journal survey is inadmissible hearsay, rate surveys have long been recognized as a means of demonstrating market rates in fee litigation. *See, e.g. Covington v. District of Columbia, supra,* 57 F.3d at 1109; *Mathis v. Spears,* 857 F.2d 749, 755–756 (Fed.Cir.1988); *Salazar v. District of Columbia, supra,* 123 F.Supp.2d at 14.

Accordingly, this Court will award Plaintiff's their fees based upon the Laffey Matrix as updated using Plaintiff's methodology.

## II. Hours Claimed

The next issue for this Court is to determine the amount of time reasonably expended. *Lindy,* 487 F.2d at 167. ICO and ECARG assert that their time expenditures as set forth in the present applications were reasonable and necessary to litigate their RCRA claims against Honeywell. Honeywell asserts that ICO and ECARG's claim hours are excessive, but backs this assertion primarily with the opinions of Michael J. Caffrey, an associate at Lowenstein Sandler. Caffrey is not a legal fee auditor, and it is unclear why he was given the task of evaluating the hours expended by counsel for ICO and ECARG

as an arbiter of reasonableness. ICO and ECARG assert that Caffrey did little more than tally up the total hours that were spent on RCRA related activities, and arbitrarily reduce those hours.

Furthermore, it is important to note that this Court may not reduce counsel fees *sua sponte* as excessive, redundant, or otherwise unnecessary in the absence of a sufficiently specific objection to the amount of fees requested. In statutory fee cases, it is well settled that in calculating the "lodestar," the court may not award fees less than requested unless the opposing party makes specific objections to the fee request. *Cunningham v. City of McKeesport,* 753 F.2d 262, 266 (3d Cir.1985), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986), *reinstated,* 807 F.2d 49 (3d Cir. 1986) ("when an opposing party has been afforded the opportunity to raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure, and declines to do so, no reason occurs to us for permitting the trial court to disregard uncontested affidavits filed by a fee applicant."). Although Honeywell does raise objections to ICO and ECARG's fee requests, there is far too little specificity to most of the objections other than to suggest that a smaller amount should be paid.

## A. Standard for Evaluating Reasonableness of Hours Charged

The Third Circuit has explained that, as part of the assessment of the reasonableness of fee petitions, district courts "should review the time charged,

---

4. Judge Kessler's post *Salazar* fee award in *Bolden v. J & R, Inc.,* 135 F.Supp.2d 177, 179, n. 2 (D.D.C.2001), based on the U.S. Attorney's matrix does not affect her decision approving the matrix advocated by plaintiffs and rejecting the U.S. Attorney's matrix because plaintiffs in *Bolden* sought a fee award based

only on the U.S. Attorney's matrix. Moreover, that the number of cases approving the U.S. Attorney's matrix is large is of no moment, because those fee applicants did not challenge the appropriateness of the U.S. Attorney's matrix.

decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.' " *Windall,* 51 F.3d at 1188. When a defendant challenges the number of hours as being excessive, courts frequently look at two factors to guide the assessment of reasonableness—whether such charges would be billed to a fee-paying client, and what the opposing party did in the same case. *In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 587 (3d Cir.1984); *Lenard v. Argento,* 808 F.2d 1242, 1245 (7th Cir.1987); *Jordan v. CCH, Inc.,* 230 F.Supp.2d 603, 611 (E.D.Pa.2002); *Coalition to Save Our Children v. State Bd. of Educ.,* 143 F.R.D. 61, 63–65 (D.Del.1992). Honeywell fails to indicate what their billing practices were in this case.

In *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720 (1989), the Third Circuit held that the opposing party bears the burden of challenging the reasonableness of a fee application with sufficient specificity as to give the applicant notice and an opportunity to respond. Specifically, the Third Circuit stated that:

> [A] court may not sua sponte reduce the amount of the award when the defendant has not specifically taken issue with the amount of time spent or the billing rate, either by filing affidavits, or in most cases, by raising arguments with specificity and clarity in briefs (or answering motion papers). . . . It bears noting that the district court retains a great deal of discretion in deciding what a reasonable fee award is, so long as any reduction is based on objections raised by the adverse party.

*Id.* (Internal citations omitted). The court went on to state that:

> [T]he adverse party's submissions cannot merely allege in general terms that the time spent was excessive. In order

to be sufficient, the briefs or answers challenging the fee request must be clear in two respects. First, they must generally identify the type of work being challenged, and second, they must specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable. The briefs must be specific and clear enough that the fee applicants have a fair chance to respond and defend their request. [footnote omitted].

*Id.* at 720.

In *Rode v. Dellarciprete,* 892 F.2d 1177, 1187 (1990), the Third Circuit explained that based on the challenges raised by the adverse party, the district court must "explain why it concludes hours expended on a task are excessive" and must "specify the number of hours that would be reasonable and why those hours would be reasonable." It also reiterated that "[t]he district court cannot 'decrease a fee award based on factors not raised by the adverse party.' " 892 F.2d at 1183 (*quoting Bell v. Union Princeton Properties, supra*).

ICO characterizes Honeywell's challenge to their fee application as "nothing more than arbitrary numbers selected by associates on Honeywell's litigation team." ICO's characterization is not altogether unfounded, indeed, Honeywell's opposition falls well short of their burden to challenge the reasonableness of ICO and ECARG's fee applications. Accordingly, this Court shall only reduce the fee requested by ICO and ECARG where Honeywell has made a sufficiently specific objection. This Court will focus primarily upon those objections by Honeywell which are sufficiently specific to guide this Court in evaluating the hours claimed by Petitioners.

### B. ICO's Fee Application

#### 1. Number of Counsel at Trial

 Here, Honeywell argues that the hours for trial are excessive due to the

number of attorneys at trial.[5] Plaintiff had two or three attorneys present at the trial. A reduction is warranted only if the attorneys were doing the same work. *Rode v. Dellarciprete, supra,* 892 F.2d at 1187. At trial each of Plaintiffs' counsel performed different functions. Courts frequently look to the number of attorneys representing the defendant at trial to assess the reasonableness of the number of attorneys representing the Plaintiff. *See e.g., Finch v. Hercules, Inc.,* 941 F.Supp. 1395, 1425–1426 (D.Del.1996). Here, Honeywell had four attorneys in attendance throughout the trial. Because ICO's counsel were performing different functions, and because Honeywell too had several counsel attend trial, it is the opinion of this Court that the attendance of multiple counsel at trial for ICO is reasonable. Accordingly, the Terris Firm shall receive a fee award to compensate for the attendance of all three attorneys present at trial.

### 2. Hours Unrelated to the RCRA Claim

■■■ The time expended in ICO's fee application is set forth by activity and individual in the time records of counsel which are divided between two cases; *ICO v. Honeywell* (95–2097) and *Hackensack Riverkeeper v. Honeywell* (00–1451). This is despite the fact that the Amended Order awarded ICO fees and costs it "incurred in the furtherance of its *RCRA claim against Honeywell in this action.*" *Interfaith Cmty. Org. v. Honeywell, Inc.,* 263 F.Supp.2d 796, 843 (D.N.J.2003) (emphasis added). ICO's application also includes some time spent litigating unsuccessful Clean Water Act and statutory RCRA claims. Although ICO has excluded the time spent with regard to these claims to the extent that it is possible, some of the time is inherently inseparable.

Furthermore, ICO has included all time related to the imminent and substantial endangerment RCRA claims against Grace and Roned, even though those claims were dismissed. Since this Court has determined that Grace is an indispensable party to the litigation, the imminent and substantial endangerment claims against Grace and Roned are inextricably related to ICO's successful RCRA claim against Honeywell. However, the fact that Grace and Roned were necessary parties is not relevant to the present fee application. Once these parties were joined, the time expended prosecuting RCRA claims against these parties was not fairly devoted to ICO's RCRA claims against Honeywell.

Accordingly, this Court deducts from ICO's fee request the 153.7 hours that ICO devoted to its unsuccessful claims against Grace and Roned. While these hours are certainly tangentially related to the overall case, these hours were not incurred specifically in furtherance of ICO's successful RCRA claim against Honeywell. Moreover, this Court concludes that ICO cannot recover for attorney time in preparing

---

**5.** Indeed, during the trial, this Court warned counsel, stating:

I just want it understood. I see that there are three counsel present, and to an extent, four. Now I'm not making any decisions on fee applications; but it should be understood that you should be aware that I'm going to follow the appropriate case law and the like with respect to the attorneys and the amount of time in the cases. And there have been lots of different opinions about this, but I follow the rule about reasonableness and time, and I just want to let it be known up front that I always question when there's three attorneys trying a case. That's a lot of attorneys to be trying a case and to be here all this time. And I just want to let it be known that just because you're here, don't automatically assume that I'm going to be agreeing to fee applications for all the attorneys that are here. Trial Transcript, Vol. 1, pp. 21–23 (Jan. 14, 2003).

RCRA notice letters to Grace and Roned; for time incurred preparing a complaint against Grace and Roned; for time incurred drafting a letter to Grace and Roned outlining that which ICO believes Grace and Roned should disclose as part of their initial disclosure; or for time spent opposing Grace's motion to dismiss.

■ Honeywell further asserts that ICO is not entitled to a 55% reimbursement for time spent in opposition to Defendant's motion to dismiss because the RCRA and substantial endangerment issues were only one-third of the total issues in the motion. This assertion by Honeywell borders on the absurd—while the Defendant's motion may have included three issues, it is a gross oversimplification to assume that each issue would require the same time and attention. RCRA substantial endangerment claims are complicated and require a great deal of attention. Accordingly, this Court finds that ICO is entitled to 55% reimbursement for the time spent opposing Honeywell's motion to dismiss.

### 3. Excessive Hours

■ In support of their application, Plaintiff has submitted contemporaneous time records of counsel, as well as the total amount of time expended by each individual litigation activity. The activities engaged in by Plaintiff's counsel throughout the litigation are described in detail in the three affidavits of Bruce J. Terris, Plaintiff's lead counsel. Again, unless specifically objected to by Honeywell, the time expended by Plaintiff's counsel is deemed reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1187 (1990).

■ Honeywell makes numerous assertions that Plaintiff's hours are unreasonable. Honeywell also suggests an amount of time that it believes would be reasonable for each activity. Honeywell fails, however, to justify its assertions that

Plaintiff's time is excessive or its claims as to the amount of time that would be reasonable. Without more, this Court cannot reach any conclusion other than that the hours expended by Plaintiffs were reasonable.

There can be no doubt that this has been an extensive and very involved lawsuit. Furthermore, there is no question but that the Terris Firm spent a great number of hours preparing for as well as conducting this suit. To the extent that Honeywell makes specific objections to the hours claimed in ICO's fee application, those objections shall be discussed in turn.

■ Honeywell asserts that the time spent in preparing Plaintiff's pretrial findings of fact and conclusions of law should be excluded because this document was not ultimately required by the Court. However, until October 16, 2002, when this Court decided to make such pretrial findings optional, the deadline for the submission of each party's pretrial findings was October 24, 2002. Clearly, it is reasonable for Plaintiff to have substantially prepared their pretrial findings by October 16, 2002. Furthermore, since the preparation of the pretrial document advanced Plaintiff's preparation of their post trial findings, it is substantially related to their successful RCRA substantial endangerment claim and is therefore recoverable.

Honeywell asserts that the time expended on the preparation of post-trial findings was excessive and should be reduced to 200 hours. However, Honeywell provides no justification for this figure. Accordingly, this Court concludes that the hours expended by Plaintiffs are reasonable.

Likewise, Honeywell makes the assertion that the number of hours spent preparing the Pretrial Order should be reduced to 300 hours but provides no justification for this figure. Nor does Honeywell provide any justification for

their assertion that the document review time should be reduced to 350 hours or that the time spent preparing the second motion for summary judgment should be reduced to 100 hours. Accordingly, this Court will allow reimbursement Plaintiffs for the actual time expended on these activities.

■ Honeywell further asserts that the time expended on motions to enforce the January 1997 Order and for a preliminary injunction that were not filed are not compensable. However, both of these motions were prepared in order to advance a very slowly progressing litigation. The second motion to enforce the January 1997 Order was not filed because Magistrate Judge Haneke issued an order on May 26, 2000 to enforce. The preliminary injunction motion was not filed because, after it was completed, but before it was filed, Honeywell began to make repairs to the Interim Remedial Measures in response to DEP directives, and because the case was reassigned to this Court and pretrial activities were ordered.

■ Honeywell also asserts that ICO should not be compensated for time spent on a crossmotion for summary judgment as to standing because the issue of standing was already being litigated in Honeywell's motion to dismiss. However, had Plaintiff successfully opposed Honeywell's motion to dismiss, but not moved for summary judgment, Plaintiff would still have to present an affirmative case at trial to demonstrate standing. Because the issue of standing would have to have been affirmatively presented regardless, this Court finds the time expended on this motion by Plaintiff to be reasonable.

■ Honeywell argues that no fees should be awarded to Plaintiff for the efforts expended on Plaintiff's motion to reinstate the Clean Water Act claim because the motion was never filed. Plaintiff seeks only a very limited amount of their time on

this motion as it was related to an unsuccessful Clean Water Act claim. Plaintiff claims only 14% of the total time spent on the motion, as this represents the part of the motion regarding the imminent and substantial endangerment claim related to surface water contamination. Accordingly, this Court accepts Plaintiff's reduction and awards the fees as claimed.

■ Honeywell also seeks to reduce hours as excessive where Plaintiff was represented by two attorneys at depositions. In each of these instances, the deposed parties were Honeywell's technical people or experts. In such circumstances it is entirely reasonable for ICO to have more than one attorney present because the assistance of an attorney who is familiar with the technical issues and data presented at such a deposition is often necessary, and therefore strikes this Court as eminently reasonable. Accordingly, this Court agrees with ICO that Plaintiff is entitled to reimbursement for the attendance of a second attorney at such depositions.

■ Next, Honeywell attempts to reduce the hours claimed for a pretrial conference because three attorneys attended the conference. The conference lasted for only one hour, and, given the complex nature of this litigation, this Court finds that the attendance of three counsel was reasonable.

■ Honeywell further asserts that the amount of time expended on the Pretrial Order was excessive and that Plaintiff's counsel failed to delegate the work performed in conjunction with the development of the Pretrial Order. Honeywell does not provide information as to what, if any work should have been delegated, nor why delegation would have been appropriate in this instance. Given the complexity of this matter, this Court finds that the time spent on these activities was reason-

able and is therefore compensable. This Court further finds that the Plaintiff's staffing was reasonable under the circumstances.

■ Honeywell also attempts to reduce the amount of time claimed by Plaintiff for scheduling and status conferences by omitting the time for a second attorney at the conferences and by excluding time that Honeywell alleges is excessive. Honeywell fails to adequately explain why the time was excessive or why their reductions are appropriate for the work performed. Without more, this Court cannot make any conclusion other than that the hours claimed by Plaintiff are reasonable. Accordingly, Plaintiff shall be compensated for the time at scheduling and status conferences as claimed.

■ Honeywell also reduces the time for the October 15, 1996, conference to omit the time of a second attorney at the conference. Due to the importance of this conference, this Court finds that the attendance by two counsel reasonable. Honeywell also reduces the time expended for the November 18, 1996, conference by omitting travel time. However, the November 18, 1996 conference was a telephone conference. Accordingly, this attempt at a reduction in time is baseless.

■ Honeywell also asserts that the amount of time spent by Plaintiff in preparing the Complaint was excessive. However, Honeywell fails to inform this Court as to what work within the Complaint was excessive, merely offering this Court its conclusion. This Court has reviewed the Plaintiff's time records and concludes that the work described was necessary and reasonable in the preparation of the Complaint. Accordingly, Plaintiff is to be reimbursed for all of the hours spent preparing the Complaint.

Thus, this Court awards Plaintiff their fees for all of the hours claimed in their fee application, with a reduction for the 153.7 hours that ICO devoted to its unsuccessful claims against Grace and Roned.

### 4. Paralegal Time

■ Honeywell asserts that Plaintiffs should not be compensated for all of the paralegal time because it is excessive and, in some instances, involves clerical tasks. Honeywell notes several instances of paralegal time spent performing essentially clerical tasks, but then takes the illogical next step of suggesting that only 1,000 hours of paralegal time should be compensated.

■ Generally, paralegal time devoted to clerical tasks is not reimbursable. See Missouri v. Jenkins, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) ("purely clerical or secretarial tasks should not be billed at the paralegal rate, regardless of who performs them"); Lalla v. City of New Orleans, 161 F.Supp.2d 686, 710–711 (E.D.La.2001); Blakey v. Continental Airlines, Inc., 2 F.Supp.2d 598, 605 (D.N.J.1998). An opponent to a fee application need not challenge each individual time entry, but may instead challenge time entries en masse by category. See Bell, 884 F.2d at 720.

■ Clearly, a paralegal performing essentially clerical tasks should not be compensated at a paralegal's rate. Assuredly, a court cannot reimburse an attorney at an attorney's billing rate for merely clerical tasks such a moving furniture or stacking boxes. Likewise, this Court will not reimburse at a paralegal's rate work which could have been made less expensive. Defendant has noted several instances of clerical work performed by, as well as billed at a rate commensurate to, paralegals. This work amounted to 91.21 hours, and is billed at $120.00 per hour. Accordingly, ICO's fee application shall be reduced in the amount of $11,310.04.

### 5. Travel Time

 Honeywell asserts that, because Plaintiff should have retained New Jersey counsel, that ICO should not be awarded fees for travel time from Washington, D.C. to New Jersey. However, as discussed, *supra*, since it was reasonable for Plaintiff to retain Washington, D.C. counsel in this matter, it is reasonable to reward travel time. Accordingly, counsel for ICO will be compensated at their usual rate for travel time from Washington, D.C. to New Jersey.

## C. ECARG's Fee Application

### 1. Hours Claimed

 Wallace King and Carella Byrne have provided this Court with copies of their detailed monthly billings related to this matter for the period through May 20, 2003. Both Wallace King and Carella Byrne have adjusted their monthly bills to exclude services pertaining to non-RCRA issues. The bills submitted describe the work performed by each attorney, setting forth the date of the work, as well as the time spent in 6–minute increments. This Court finds that the bills submitted are sufficiently detailed and adequately describe the legal services provided by the firms with respect to the RCRA related issues.

Honeywell has asserted that the hours that ECARG attempts to recover for legal services rendered by Wallace King and Carella Byrne are unreasonable. Honeywell has asserted that the hours expended by Wallace King and Carella Byrne are generally excessive, and also has objected to the time that was devoted to specific tasks. Honeywell's objections shall be discussed in turn.

 In large part, Honeywell's opposition to ECARG's fee application is a broad-brush approach based upon an analysis of Wallace King and Carella Byrne's hours prepared by Michael J. Caffrey, an associate with Lowenstein Sandler, counsel for Honeywell. With respect to Wallace King, Mr. Caffrey states that:

> Based on the analysis of Wallace King time contained in Exhibit B, Honeywell submits that the reasonable amount of Wallace King time attributable to ECARG's RCRA claim is 5,649.29 hours, 3,664.89 for attorneys and 1,985.41 for paralegals. This is approximately 47% of the requested hours.

Mr. Caffrey makes a similar reduction with respect to Carella Byrne, stating:

> The time entries for Carella Byrne were allocated [by Mr. Caffrey] into categories similar to those used for Wallace King. Attached as Exhibit E is the Summary Table of ECARG's Requested Fees and Honeywell's Proposed Reasonable Fees for Carella Byrne. Carella Byrne time is allocated to sixty-four (64) categories of legal services relevant to the RCRA claim. Honeywell proposes that the reasonable amount of Carella Byrne time attributable to ECARG's RCRA claim is 664.89 hours, 650.48 for attorneys and 12.67 for paralegals. This is approximately 34% of the requested hours.

The vast majority of the reductions proposed by Mr. Caffrey are based upon the opinion of Mr. Caffrey that the time spent on various RCRA tasks was excessive. Moreover, much of Mr. Caffrey's reductions to Carella Byrne's time are based upon Mr. Caffrey's assertion that much of Carella Byrne's time was "excessive, duplicative of Wallace King."

For much of their opposition, there is nothing that has been submitted by Honeywell which would allow this Court to make any reasoned or supportable determination that the reductions proposed by Honeywell are reasonable. Insofar as Honeywell makes sufficiently specific ob-

jections to the hours billed by ECARG, those shall be considered *infra*.

### 2. Pre–Trial and Trial Preparation Activities

Honeywell asserts that the 2,100 hours spent by Wallace King and Carella Byrne attorneys in pre-trial and trial preparations, much of which was spent by partner-level attorneys is excessive and that more of the work should have been performed by associates.

 This Court finds that the Wallace King and Carella Byrne legal bills submitted in support of the presently pending Petition adequately describe and justify the time expended by the attorneys on pre-trial and trial preparation tasks. Moreover, while this Court is cognizant of the fact that partner time is more costly than associate time, this Court is also cognizant of the fact that the partner level attorneys involved in this litigation have the greatest familiarity with RCRA issues as well as the intricacies of environmental litigation. The familiarity of Messrs. Marraro, Agnello, and Hughes with RCRA issues and environmental litigation generally would render it grossly inefficient and unreasonable to delegate important pre-trial and trial preparation tasks to less experienced junior associates.

Moreover, this Court is satisfied, based upon the submissions of Wallace King and Carella Byrne, that less complex trial preparation matters such as legal research, review and organization of trial exhibits, preparation of arguments as to evidence were delegated to junior level associates and paralegals whenever appropriate.

Accordingly, this Court rejects Honeywell's objections to the time expended on pre-trial and trial preparation activities.

### 3. Case Transfer from Pitney Hardin

 ECARG seeks reimbursement for 23.36 hours that were expended transferring the case and files from Pitney Hardin (ECARG's prior counsel) to Wallace King. The time spent transferring the files is an administrative expense, and is therefore nonrecoverable. Accordingly, ECARG may not recover the $7,398.20 associated with those activities.

### 4. Bankruptcy Matters

 ECARG also seeks reimbursement for 7.57 hours spent by attorneys on bankruptcy matters with regard to ECARG. Because this time was not related to ECARG's successful assertion of their RCRA claim, ECARG may not recover the $2,563.80 associated with those activities.

### 5. Findings of Fact and Conclusions of Law

 Honeywell further asserts that Wallace King and Carella Byrne spent 650 hours of attorney time preparing proposed post-trial findings of fact and conclusions of law which Honeywell argues is "a staggering amount of time for a single filing." Honeywell further asserts, without support, that 250 hours of attorney time is reasonable and that half of those 250 hours should have been spent by junior level associates.

This Court is convinced that the preparation of ECARG's proposed post-trial findings of fact and conclusions of law involved a significant degree of case knowledge and a great deal of effort. Indeed, many complex issues related to the RCRA claim had to be examined, including but not limited to: the history of disposal activities at the Site, the nature and extent of the chromium contamination, and the nature and extent of the risks posed to

human and environmental receptors at the Site.

Furthermore, the preparation of ECARG's proposed post-trial findings entailed reviewing, checking, and drafting rebuttal points to the more than one-thousand proposed findings that Honeywell and ICO circulated in April, 2003. Also, the papers submitted by ECARG in support of the present Petition indicate that basic legal research and other routine matters relating to the preparation of proposed post-trial findings of fact and conclusions of law were delegated to junior level associates or paralegals to the extent possible.

Moreover, it was reasonable, given the circumstances, for Wallace King and Carella Byrne to have Messrs. Agnello, Marraro and Hughes do much of the work in connection with the proposed findings of fact and conclusions of law due to the extensive experience and knowledge that these attorneys possess with regard to RCRA related matters and since they actually tried the case.

### 6. Office Conferences/Strategy Sessions

Honeywell also asserts that the 990 hours for office conferences and strategy sessions by and between ECARG's counsel are unreasonable. Instead, without support or analysis, Honeywell suggests that 350 hours of office conferences and strategy sessions should be permitted.

ECARG's RCRA claim was filed in 1999. Over the four year period that ECARG's RCRA claim was litigated, the 990 hours averages less than 5 hours per week among all ECARG attorneys in the Wallace King and Carella Byrne firms. Given the context and complexity of this case, 5 hours per week is hardly a staggering figure.

Accordingly, this Court finds that the hours expended by ECARG in office conferences and strategy sessions on this matter to be reasonable and recoverable.

### 7. Multiple Counsel at Trial

Here, Honeywell argues that the hours for trial are excessive due to the number of attorneys at trial. ECARG had up to four attorneys at the trial. A reduction is warranted only if the attorneys were doing the same work. *Rode v. Dellarciprete, supra,* 892 F.2d at 1187. At trial each of ECARG's counsel performed different functions. Courts frequently look to the number of attorneys representing the defendant at trial to assess the reasonableness of the number of attorneys representing the Plaintiff. *See e.g., Finch v. Hercules, Inc.,* 941 F.Supp. 1395, 1425–1426 (D.Del.1996). Here, Honeywell had four attorneys in attendance throughout the trial. Because ECARG's counsel were performing different function, and because Honeywell too had several counsel attend trial, it is the opinion of this Court that the attendance of multiple counsel at trial for ECARG is reasonable. Accordingly, ECARG shall receive a fee award to compensate for the attendance of all counsel present at trial.

### 8. Paralegal Time

Honeywell also objects to the number of paralegal hours being claimed in the ECARG Petition as being unreasonable. Honeywell does not contend that paralegal time is not reimbursible, only that the amount of paralegal time incurred by ECARG was excessive.

Honeywell asserts that "no more than between 1,500 to 2,000 of the requested ECARG paralegal hours should be reimbursable," and that clerical tasks performed by ECARG paralegals are not reimbursable.

There can be no doubt that this case was document intensive. Almost 500,000 pages

of documents were produced, there were over 43 depositions, 4,475 pieces of correspondence, in excess of 135,000 pages of trial exhibits, and over 370 motions, briefs and other submission to this Court. Accordingly, this Court finds that the use of paralegals ·to perform tasks typically attributable to paralegals to be reasonable and reimbursable staffing.

■ As discussed, *supra*, paralegal time devoted to clerical tasks is not reimbursable. Defendant has noted several instances of clerical work performed by, as well as billed at a rate commensurate to, paralegals. This work amounted to 114.60 hours, and is billed at $130.00 ·per hour. Accordingly, ECARG's fee application shall be reduced in the amount of $14,898.00.

■ Furthermore, ECARG requests reimbursement of $19,177.25 in temporary paralegal costs, representing over 140 hours of paralegal work. This Court concludes that, given the 4,738 hours billed by staff paralegals that the additional paralegal time is not reimbursable, as ECARG has not demonstrated the need for such additional staffing. Accordingly, ECARG may not recover for temporary paralegal time.

### 9. Travel Time

■ ECARG seeks reimbursement for 284.7 hours spent by attorneys traveling between Washington, D.C. and New Jersey. However, because ECARG has not demonstrated that competent New Jersey counsel were unavailable or unwilling to handle this litigation, they are not entitled to reimbursement for the $104,480.85 in travel time between Washington and New Jersey. Accordingly, that amount will be reduced from ECARG's recovery.

### III. Litigation Expenses

As an initial matter, this Court takes note of the fact that many of Honeywell's objections to ICO and ECARG's fee petitions seem to reduce the costs expended to the amount that might be spent if the attorneys working on this matter used the most affordable service providers and worked with perfect efficiency. While this may be possible in a perfect world, complex environmental litigation is quite far afield from a perfect world. Service providers are often very expensive, and efficiency is almost impossible due to the complexity of such litigation. Moreover, counsel for ICO and ECARG are not in the business of saving money, counsel are in the business of winning lawsuits. Indeed, the Terris Firm, Carella Byrne, and Wallace King all bear the risk of unsuccessful litigation, so it is obviously in their best interest to control costs. · But upon prevailing on their RCRA claims, it is their lawyering, not their frugality that is to be compensated.

### A. Experts and Consultants

■ In order to be compensable, expert witness fees and costs, like attorneys fees and costs must be necessary. *See Halderman*, 49 F.3d at 942–43; *Monsanto*, 727 F.Supp. at 889. The documentation as to expert fees must be sufficient "to provide the Court with a factual. basis to ·evaluate the nature of the work done, the quantity and quality of the work, the reasonableness of. the rates charges, the necessity for the work, and the nature of its contribution to the plaintiff's case." *Steiner v. Hercules Inc.*, 835 F.Supp. 771, 794 (D.Del.1993); *Monsanto*, 721 F.Supp. at 625.

### 1. ICO's Experts

■ The Terris Firm ·seeks to reimburse Dr. Bruce Bell $389,807.59, but Honeywell asserts that ICO's recovery of fees and costs incurred by Dr. Bell should be limited to $134,455.29. Honeywell

makes a similar assertion with respect to Dr. Ben Ross, arguing that his reimbursement should be reduced from $194,491.54 to $96,090.27 because of "excessive travel" and overbilling. Finally, Honeywell asserts that recovery for work performed by Dr. Cheryl Montgomery should be reduced from $184,492.31 to $81,564.45 for excessive billing.

 Honeywell further asserts that Plaintiff and ECARG should have jointly retained experts. However, since these two parties separately engaged in settlement negotiations with Honeywell, neither could have relied upon the other to prove the case for liability or relief at trial. Moreover, ECARG amended its cross-claims against Honeywell in November, 1999, to include the RCRA claim, whereas ICO carried the entire burden of the case against Honeywell well before that date. Moreover, while Honeywell does label the work performed by ICO's experts as "excessive" it provides this Court with little reason to leap to this conclusion other than that Honeywell's attorneys seem to believe that less time and expense could have been incurred.

The work performed by the experts retained by Plaintiff in this matter was vital to their success at trial. The work of the experts greatly assisted this Court in evaluating some of the more technical aspects of the litigation, and was also necessary to rebut the technical information presented by Honeywell. Accordingly, this Court finds that the work done by each of ICO's experts was reasonable based on the length and complexity of this litigation.

### 2. ECARG's Experts

 ECARG seeks to reimburse Dr. Kirk Brown and his company the SI Group, LLC $957,681.72, but Honeywell asserts that the recovery should be limited to $109,593 because the use of 35 support staff and billing 8,300 hours is excessive. ECARG contests that Dr. Brown played a huge role at trial, and was cited by this Court as "an excellent witness" to whose testimony this Court gave "the greatest weight." Honeywell makes a similar assertion with respect to Dr. Andy Davis, arguing that the request for $644,871.35 should be reduced to $125,754.04 because of "substantial overbilling" including 2,100 hours for preparation of trial exhibits and 1,100 hours preparing for trial. ECARG argues that the hours worked by Dr. Davis were reasonable given the scope and complexity of the litigation.[6] Likewise, Honeywell asserts that recovery for work performed by Dr. Elizabeth Anderson should be reduced from the $628,554.93 sought to $137,421 because of a lack of narrative records for much of the time claimed by Dr. Anderson—thus failing the burden of proof imposed by *Steiner v. Hercules Inc.*, 835 F.Supp. 771, 779 (D.Del. 1993) (denying expert witness fees due to inadequate documentation). ECARG has since submitted the detailed explanations of Dr. Anderson's activities. Honeywell objects, and has submitted a sur-reply, but the sur-reply is little more than a blanket accusation that Dr. Anderson overbilled. Honeywell also seeks to exclude compensation for work performed by Dr. Ronald Schmiermund because that work was purportedly not related to the RCRA claim. ECARG counters that Dr. Schmiermund testified that COPR is the cause of heaving at the Site, and that this Court, based in part on this testimony, determined that the proper remedy would be excavation and removal of the COPR. Honeywell also seeks to reduce the compensation for work performed by Dr. Peter Chapman from

---

**6.** ECARG does, however, voluntarily waive surcharges/markups charged by Dr. Davis ($3,316.64).

$99,341.99 to $47,583.82 due to lack of narrative time records. ECARG has since submitted the detailed explanations of Dr. Chapman's activities. Honeywell objects, and has submitted a surreply, but the surreply is little more than a blanket accusation that Dr. Chapman overbilled.

Again, given the length and complexity of this litigation, it is entirely reasonable for ECARG to have retained and utilized all of the above experts. The time records that have been provided to this Court are sufficiently detailed, and do not appear to be excessive, as asserted by Honeywell. Indeed, Honeywell's overarching argument is simply that the hours and expenses incurred by ECARG's experts are excessive-without more this Court cannot reach any conclusion other than that the work of the above experts is reimbursable.

■■■ Honeywell also seeks to reduce the compensation for work performed by Dr. Donald Belsito from $139,860.31 to $59,751 because the 66 hours of deposition preparation time is excessive and should be reduced to 40, and because Dr. Belsito billed $29,400 for the submission of a risk assessment study that Honeywell argues was unrelated to the RCRA litigation. ECARG asserts that Dr. Belsito spent his time reviewing and analyzing hundreds of technical documents that are inherently time consuming, and that his risk assessment study was related to the RCRA case and was, in fact, presented as part of ECARG's RCRA case.

The risk assessment study submitted by Dr. Belsito was submitted to the New Jersey Department of Environmental Protection, and argued for the revision of direct contact standards for chromium. This submission to the Department of the Environment does not appear to be sufficiently related to this RCRA litigation, as New Jersey's chromium standards were not at issue in the RCRA claims before this Court. Accordingly, ECARG is not enti-

tled to reimbursement for the $29,400.00 billed by Dr. Belsito for the preparation of this report.

### 3. Non–Testifying Consultants

■■■■ Honeywell also asserts that ICO and ECARG should not be permitted to recover for the time of three non-testifying consultants. Time and expenses incurred by consulting experts are not recoverable under a statutory fee provision such as that in RCRA. *Sierra Club v. EPA,* 769 F.2d 796, 812 (D.C.Cir.1985). *Student Pub. Interest Group, Inc. v. Anchor Thread Co.,* CIV No. 84–320(GEB), 1988 WL 49177, at *5 (D.N.J.1988), a District of New Jersey case, does permit the recovery of limited consultant fees under the Clean Water Act, but Honeywell characterizes this case as ignoring the express language of the Clean Water Act and RCRA as not contemplating fee provisions, and suggests that the award of consultant fees may be because the parties may not have contested the award. Honeywell further argues that even if this Court were to grant recovery for consultant fees, that ICO and ECARG have failed to demonstrate that their claimed fees were reasonable and necessary, and suggests that the consultants' work was duplicative of expert services already provided.

Petitioners argue that RCRA specifically provides for recovery of all "costs of litigation ..." 42 U.S.C. § 6972(e), and that consultants played a pivotal role in assisting counsel with preparing and prosecuting the RCRA claims. Petitioners further assert that the consultants retained greatly contributed to the efficient management of the case and kept counsel apprised of the significance of ongoing technical data that was being submitted throughout the case, and that without this assistance more attorney hours (at substantially higher hourly rates) would have been incurred. ICO and ECARG

assert that without the assistance of consultants, they could not have presented as effective a RCRA case as they did at trial. *Pennsylvania Envtl. Def. Found. v. Packaging Corp. of Am.*, 1989 WL 3477, at *5 (E.D.Pa. Jan 19, 1989) (awarding successful plaintiff fees under comparable provision in federal Clean Water Act for services performed by plaintiff's non-testifying environmental consultant).

While the law on this issue is somewhat undecided, this Court grants ICO and ECARG compensation for non-testifying consultants. This was a very complex environmental matter, and the attorneys involved are simply not equipped with the technical and scientific expertise necessary to efficiently deal with the complex environmental issues that arise on a day-to-day basis—this is precisely the reason that law firms often hire consultants. The consultants retained by ICO and ECARG were necessary to the prosecution of the RCRA claims, and compensation for their services is appropriate as their services are necessary to the effective prosecution of ICO and ECARG's RCRA claims, and reasonable given the high degree of scientific complexity of this case.

While ICO and ECARG are entitled to compensation for the services of non-testifying consultants, this compensation must be curtailed to the extent that such services are necessary and reasonable under the circumstances. With this in mind, this Court must exclude from ECARG's recovery $4,466.45 for overhead, administrative costs, and markups charged by its non-

testifying consultant, the Center for Toxicology and Environmental Health ("CTEH"). ECARG has waived recovery of surcharges and markups charged by Drs. Brown, Davis, and Anderson, but has not waived those of CTEH. Although retention of CTEH's services were clearly reasonable, payment of overhead, administrative costs, and markups, are not. ECARG's recovery will therefore be reduced in the amount of $4,466.45.

## B. Costs

■ ICO and ECARG's requests reimbursement for litigation costs are met with much opposition from Honeywell. Honeywell essentially makes blanket attacks, but does little to explain why their assessments of reasonable litigation expenses are in any way more valid than the actual litigation expenses incurred by Petitioners. Blanket and conclusory objections to expenses are inadequate. Objections must be specific, reasonably precise and be presented with supporting proof. *See American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*, 278 F.Supp.2d 1301, (M.D.Fla.2003) (*citing American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d at 428). Each of these objections are detailed below.

### 1. Photocopy Costs

■ ICO requests $148,715.24 in photocopying expenses, but Honeywell counters that nearly 1.5 million copies are excessive, and that a $50,000 recovery would be sufficient as it would allow for 500,000 copies.[7] Honeywell makes essentially the

---

**7.** The Terris Firm charged 20 cents/copy. This is above the 10 to 15 cents deemed reasonable by most federal courts. *See Hurley v. Atlantic City Police Dep't*, Civ. A. Nos. 93–260(JEI), 94–1122(JEI), 1996 WL 549298, at *4 (D.N.J.) (reducing the price per page from 25 to 12 cents per page); *but see James v. Norton*, 176 F.Supp.2d 385, 400 (E.D.Pa. 2001) (25 cents per page for photocopies held

to be reasonable). However, the Terris Firm's total photocopying bill amounted to $77,523.82 of internal copying at 0.20/page, and $71,191.42 of external photocopying. The external photocopying varied in price depending on the nature of the project (e.g.size, color, etc.). Honeywell suggests that ICO be reimbursed for 500,000 copies as reasonable,

same argument with respect to ECARG, that $206,885 is excessive as it would require in the neighborhood of 2 million copies. Honeywell suggests that $50,000.00 is reasonable, as it would allow for 500,000 copies at 10 cents each. Honeywell's proposed reduction provides this Court with little basis to determine the reasonableness of the expenses incurred by ICO and ECARG. Moreover, different type of copies (e.g.color, size, etc.) clearly have different costs. Accordingly, Honeywell's request to reduce the photocopy costs for ICO and ECARG is denied.

### 2. Travel Expenses

Honeywell also seeks to prevent ICO for recovering $46,970.48 that the Terris Firm incurred in travel expenses traveling from Washington, D.C. to New Jersey because ICO has not established that competent New Jersey counsel was not available. Likewise, Honeywell requests that reimbursement for $82,418 in expenses incurred by Wallace King and Carella Byrne in traveling between New Jersey and Washington, D.C. be denied because ECARG cannot establish that competent New Jersey counsel was unavailable. *Fini v. Remington Arms Co.*, 1999 WL 825604, at *9; *Student Pub. Interest Research Group v. Monsanto*, 721 F.Supp. 604, 643–614 (D.N.J.1989), *modified on other grounds*, 727 F.Supp. 876 (D.N.J.) *aff'd*, 891 F.2d 283 (3d Cir.1989).

Honeywell also argues that reductions are appropriate for reimbursable trips taken by ECARG counsel because counsel purchased full fare airplane tickets. ECARG again challenges the validity of Honeywell's argument. ECARG notes that the travel expenses were incurred in the necessary course of litigating this suit and were necessary to attend court hearings, depositions, conferences with witnesses, meetings with opposing counsel,

trial, or other in-state tasks necessary to prosecute the RCRA claim.

 Here, ICO has sufficiently demonstrated to this Court that competent local counsel was unavailable to take their case. Accordingly, ICO is entitled to recover costs incurred in traveling between counsel's office in Washington, D.C. and the forum, and is entitled to recovery of the $46, 970.48 incurred in travel expenses between Washington, D.C. and Newark.

 ECARG, however, has not demonstrated to this Court that competent forum counsel are unavailable. Where competent forum counsel is available, a fee applicant that elects to hire out-of-forum counsel is not entitled to recover costs incurred by the out-of-forum counsel traveling between counsel's office and the forum state. *Fini v. Remington Arms Co., Inc.*, No. Civ.A. 97–12–SLR, 1999 WL 825604, at *9 (D.Del. Sept.24, 1999). Accordingly, ECARG is not entitled to reimbursement for $82,418.00 in expenses that Wallace King and Carella Byrne incurred in traveling between Washington, D.C. and New Jersey.

### 3. Temporary Employees, Overtime, Meals

 Honeywell also contests recovery for money that the ICO and ECARG spent on temporary clerical employees, staff overtime, and overtime meals. The costs of temporary employees and staff overtime, and overtime meals are only reimbursable where there is a need for the additional employee or overtime, such as with an emergency. *See e.g. Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F.Supp.2d 480 (D.N.J.1998); *Monsanto*, 727 F.Supp. at 889. Honeywell asserts that there were no emergencies imposed upon the litigants during this nine year long suit, that this

---

here, ICO made 387,619 internal copies, and

an indeterminable amount of external copies.

recovery would therefore not be appropriate.

ICO counters that in this litigation, there were only 59 instances of overtime amounting to only 97.75 hours, and that this overtime was necessary based on the complexity of the litigation and the tremendous number of documents that were produced and deadlines set by this Court. ECARG makes essentially the same argument, that in this nine-year long litigation, the situations where overtime was paid, and additional staff used were in response to circumstances where the complexity of the case and Court established deadlines required additional assistance.

■ The Court is not impressed with Honeywell's arguments. Large-scale litigation is an inherently inefficient process, and often requires work to be performed on an emergency basis. Honeywell's blanket assertion that these charges should be reduced is severely lacking in merit. Accordingly, this Court shall reimburse ICO and ECARG for additional staffing, overtime and overtime meals. However, this Court will not reimburse ICO $541.08 nor ECARG $7,430.81 for local travel expenses because it has not been sufficiently shown by ICO or ECARG that circumstances existed such that incurring such travel expenses was necessary. A busy trial or the filing of a large brief is simply insufficient to justify such additional travel expenses.

### 4. Overnight Delivery Charges

■ ■ Honeywell contests reimbursement for $5,764.62, and 30,596.12 in overnight delivery and messenger charges to ICO and ECARG respectively. Express delivery costs are only reimbursable when there is a demonstrated need for the express delivery. *Monsanto,* 727 F.Supp. at 889; *but see, Apple Corps., supra,* 25 F.Supp.2d at 489–99 ("Expedited delivery may be essential to a party's ability to comply with court deadlines. In addition,

those costs are typically charged to the client. Thus ... express mail charges ... are recoverable"). Honeywell asserts that because ICO cannot demonstrate a need for express delivery that the delivery costs should be non-recoverable in their entirety, or, in the alternative, that this Court permit ICO to recover 25% of its delivery expenditures. ICO and ECARG characterize Honeywell's proposed reduction as incorrect and arbitrary, and asserts that their use of express delivery services were used only when reasonable and necessary to meet court deadlines, and that they otherwise used regular mail to avoid excessive costs. This Court agrees that express delivery costs, even when curtailed, can be rather high. Regardless, however, this Court is aware that express delivery is often a necessity in a world of litigation that is often time-pressured. Accordingly, this Court finds that the express delivery expenditures were reasonable and necessary in the context of this litigation, and are therefore reimbursable.

### 5. Private Investigator

■ Honeywell contests recovery for $3,544.87 to Wallace King for use of a private investigator, All–Facts, Inc., because ECARG has not offered sufficient justification or explanation for this expense, thus failing to demonstrate that the expense was necessary and reasonable. ECARG asserts that All–Facts conducted searches for various witnesses who were believed to have relevant knowledge of COPR disposal activities, as well as to obtain various historical aerial photographs, many of which were used at trial.

At the direction of counsel, All–Facts conducted searches of various witnesses and potential rebuttal witnesses who were believed, on the basis of Honeywell's pleadings and documents to have knowledge regarding COPR disposal activities at

the Site. All–Facts also conducted interviews and performed searches of state and local agency files for relevant historical documents and aerial photographs. Accordingly, this Court finds that ECARG's employment of All–Facts was reasonable given the context of this litigation, and is therefore entitled to reimbursement for this expense.

### 6. *Miscellaneous Costs*

■ ECARG seeks reimbursement of $5,862.69 for miscellaneous trial expenses, many of which are not documented. Although this Court recognizes that unexpected expenses are commonplace over the course of a trial, without proper documentation ECARG may not recover these expenses. Accordingly, ECARG shall not be reimbursed in the amount of $5,862.69 for miscellaneous trial expenses.

## IV. Post–Judgment Monitoring

■ Honeywell opposes ICO and ECARG's request that Honeywell bear the cost of review by ICO and ECARG counsel. In order to be reimbursable, attorney fees incurred during post judgment monitoring must be reasonable and necessary and related to the preservation of the underlying judgment. *Retarded Citizens v. Schafer*, 83 F.3d 1008, 1011 (8th Cir.1996). Honeywell asserts that monitoring by ICO or ECARG is neither necessary nor related to the preservation of the underlying judgment as this Court has already ordered extensive oversight by the Special Master and a consulting firm—each of whom is paid for by Honeywell. Honeywell asserts that further oversight is be duplicative and unnecessary.

■ Honeywell does not dispute that the prevailing party is entitled to fees for monitoring and compliance, just that the efforts to do so by ECARG and ICO are unreasonable and duplicative because the Special Master is already charged with the

oversight of the project. However, the Special Master does not fill the shoes of Petitioners' counsel in the oversight process, as the Special Master is the Court's "alter-ego" and does not act in the interest of any particular party. *See* Fed.R.Civ.P. 52.

■ Moreover, case law is clear that monitoring costs are recoverable under fee shifting statutes such as RCRA to the extent that they are reasonable. *See e.g. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, et al.*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Indeed, post-judgment monitoring is a recoverable cost under RCRA, and ICO and ECARG should be given the opportunity to file quarterly fee petitions related to the monitoring costs of the cleanup. This is not to say that all costs will be reimbursable, but ICO and ECARG may submit fee petitions and recover for any necessary post-judgment monitoring. Accordingly, ICO and ECARG may recover for fees and expenses incurred in post-judgment monitoring.

### *CONCLUSION*

For the foregoing reasons, Petitioners are to be reimbursed for litigation costs including attorneys' fees and expert witnesses' fees with deductions from the respective applications as detailed in this Opinion. An appropriate Order follows.

### ORDER

This matter coming before the Court on Plaintiff Interfaith Community Organization's and ECARG, Inc.'s applications for an award of litigation costs, including attorneys' fees and expert witnesses' fees, oral argument having been heard on May 4, 2004, this Court having carefully reviewed all submissions, and for the reasons stated in this Court's opinion filed on this day;

IT IS on this 26th day of August, 2004,

ORDERED that Plaintiff Interfaith Community Organization is entitled to an award of litigation costs, including attorneys' fees and expert witnesses' fees in an amount totaling $4,530,327.00. This amount represents the $4,587,990.22 requested by Interfaith Community Organization less $46,353.18 for expenses related to their claim against Grace and Roned, and $11,310.04 for clerical tasks performed by paralegals; and it is further

ORDERED that Petitioner ECARG, Inc. is entitled to an award of litigation costs, including attorneys' fees and expert witnesses' fees totaling $7,377,583.27. This amount represents the $7,642,385.82 requested by ECARG, Inc. less $7,398.20 for the cost of transferring the case from ECARG's prior firm, $2,563.80 for costs related to bankruptcy proceedings, $14,898.00 for clerical tasks performed by paralegals, $19,177.25 for temporary paralegal costs, $104,480.85 for travel time, $29,400.00 for the Belsito Report, $4,466.45 for CTEH markups, and $82,418.00 for travel expenses.